1  **WANGER JONES HELSLEY PC**
265 E. River Park Circle, Suite 310
2  Fresno, California 93720
Telephone:   (559) 233-4800
3  Facsimile:   (559) 233-9330

4  Christopher A. Lisieski #321862

5  Attorneys for:   PLAINTIFFS SUSAN OTTELE and WILLIAM COLLIER, JR. on their own behalf
6  and on the behalf of the Estate of Adam J. Collier, decedent

7

8  **UNITED STATES DISTRICT COURT**

9  **EASTERN DISTRICT OF CALIFORNIA**

10  SUSAN OTTELE and WILLIAM COLLIER,       Case No. 1:22-cv-00187-JLT-BAK
   JR., on their own behalf and on the behalf of the
11  Estate of Adam J. Collier, decedent,              **FIRST AMENDED COMPLAINT FOR**
                                                  **VIOLATIONS OF THE EIGHTH**
12                                                **AMENDMENT PURSUANT TO 42 U.S.C.**
                  Plaintiffs,                     **§ 1983, CALIFORNIA CIVIL CODE**
13                                                **§ 52.1, AND WRONGFUL DEATH**
       v.
14                                                **Jury Trial Demanded**
15  OSCAR MARTINEZ and AARON HODGES,
   and DOES 1–10, inclusive,
16
                  Defendants.
17

18

19

20

21

22

23

24

25

26

27

28

{8727/002/01414101.DOCX}
FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE EIGHTH AMENDMENT PURSUANT TO 42 U.S.C. §
1983, CALIFORNIA CIVIL CODE § 52.1, AND WRONGFUL DEATH

Plaintiffs SUSAN OTTELE and WILLIAM COLLIER, JR. (hereafter referred to collectively as "Plaintiffs"), by and through their counsel of record, file this complaint against Defendants OSCAR MARTINEZ and AARON HODGES, and DOES 1–10, inclusive (hereafter referred to collectively as "Defendants"), and allege as follows:

## INTRODUCTION

1.      Plaintiffs in this case are the mother and father of Adam Collier (hereafter "Mr. Collier" or the "Decedent").  Mr. Collier died by suicide due to cutting himself while incarcerated at the Kern Valley State Prison in Delano, California.  Mr. Collier had a long history of well-documented mental illness, including numerous prior instances of attempted suicide and self-mutilation or cutting. Notwithstanding this history, Mr. Collier was in a cell by himself.  He was last seen in the cell by correctional officers on the morning of October 17, 2020 when he was given breakfast.  Mr. Collier failed to report for the inmate count at noon.  His body was found in his cell at 3:32 p.m. by Defendants, an estimated eight to nine hours after a correctional officer last laid eyes on him. Defendants' deliberate indifference toward Mr. Collier's high risk of suicide caused his ultimate death.

## JURISDICTION AND VENUE

2.      This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367, as it arises under 42 U.S.C. § 1983.

3.      This court has personal jurisdiction over all Defendants as Plaintiffs are informed and believe and thereon allege that each is a resident of California.

4.      Venue is proper in this court pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claim occurred in Kern County, which is within this judicial district.

5.      On or about March 8, 2021, within six months of the conduct of the Defendants that gives rise to this lawsuit and which caused Plaintiffs' injuries, Plaintiffs timely complied with the Government Tort Claims Act under Government Code § 910 by filing a claim for damages form with the Office of Risk and Insurance Management which presented all facts and injuries known or reasonably known to the Plaintiff regarding his claims.  Plaintiffs amended this claim on or about April 8, 2021.  The amended claim form is attached to this complaint as **Exhibit A**.

6.      Pursuant to Government Code §§ 913 and 915.4, the Office of Risk and Insurance Management rejected Plaintiffs' claims on or about September 8, 2021.  Accordingly, Plaintiffs have standing to bring suit for monetary damages.  Plaintiffs have timely filed their original complaint within six months from the date of Defendant's Notice of Rejection.  The rejection letters from the Office of Risk and Insurance Management are attached to this complaint as **Exhibit B**.

<u>**PARTIES**</u>

7.      At all times relevant herein, Plaintiff Susan Ottele was and is the mother of the Decedent, Mr. Collier.

8.      At all times relevant herein, Plaintiff William Collier, Jr. was and is the father of the Decedent, Mr. Collier.

9.      Plaintiffs Ottele and Collier are permitted to bring this cause of action on their own behalf and on behalf of Mr. Collier pursuant to California Code of Civil Procedure § 377.60(a) ("A cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by any of the following persons or by the decedent's personal representative on their behalf . . . (a) . . . if there is no surviving issue of the decedent, the persons . . . who would be entitled to the property of the decedent by intestate succession.").  Plaintiffs are the individuals who would be entitled to the property of the decedent by intestate succession.

10.     Plaintiffs are informed and believe and thereon allege that Defendant OSCAR MARTINEZ ("Martinez") is a citizen of California, and is a correctional officer employed by or an agent of the California Department of Corrections and Rehabilitation ("CDCR") and Kern Valley State Prison.

11.     Plaintiffs are informed and believe and thereon allege that Defendant AARON HODGES ("Hodges") is a citizen of California, and is a correctional officer employed by or an agent of the California Department of Corrections and Rehabilitation ("CDCR") and Kern Valley State Prison.

12.     The true names and capacities of Defendants DOES 1 through 10, inclusive, are unknown to Plaintiffs who therefore sue said Defendants by such fictitious names.  Plaintiffs will seek

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE EIGHTH AMENDMENT PURSUANT TO 42 U.S.C. § 1983, CALIFORNIA CIVIL CODE § 52.1, AND WRONGFUL DEATH

leave of this Court to amend this Complaint when the true names and capacities of these defendants have been ascertained.

## FACTUAL ALLEGATIONS

13.     Mr. Collier was born in 1977 in Oregon.  He is the son of Plaintiffs.

*History of Health Problems in CDCR*

14.     Mr. Collier had a long-standing and well-documented history of mental illness, suicide attempts, and self-harm while in the custody of CDCR.  This included numerous prior suicide attempts with a cutting implement, including slashing his own neck open.

15.     Further, CDCR records reflect numerous mental health diagnoses for Mr. Collier: amphetamine-induced anxiety disorder; antisocial personality disorder; bipolar I disorder; borderline personality disorder; depression; post-traumatic stress disorder; and psychosis.

16.     Mr. Collier was on no less than nineteen (19) psychiatric medications at different times during his incarceration in CDCR, including: aripiprazole (Abilify); sertraline (Zoloft); mirtazapine (Remeron); hydroxyzine (Vistaril); olanzapine (Zyprexa); fluoxetine (Prozac); sodium valproate (Valproic Acid); Lithium; haloperidol (Haldol); chlorpromazine (Thorazine); quetiapine (Seroquel); lamotrigine (Lamictal); bupropion (Wellbutrin); paroxetine (Paxil); venlafaxine (Effexor); Trazodone; lorazepam (Ativan); Diazepam; clonazepam (Klonopin); and paliperidone (Invega).

17.     CDCR records reflect Mr. Collier had a history of homelessness, sexual, physical, and emotional abuse; severe, chronic, and inadequately treated pain due to a failed lumbar fusion (Failed Back Surgery Syndrome); chronic low back pain; and chronic pain resulting from prior surgery to his testicles.

18.     Mr. Collier had at least eight (8) prior suicide attempts documented in CDCR records.

19.     Mr. Collier first attempted suicide when he was 12 or 13, by taking pills, which resulted in a lengthy hospitalization.  He attempted suicide again in 2002 by jumping in front of a bus.  In 2006, Mr. Collier attempted suicide by overdosing on methamphetamine, ultimately surviving after having been in a coma for six days.  Mr. Collier attempted suicide by cutting his wrists in both 2013 and 2014, and experienced auditory hallucinations during one of those instances.  In 2017, Mr. Collier stabbed himself in the neck.

20.     On April 1, 2006, Mr. Collier attempted suicide by overdosing on pills.  The severity of the attempt was rated a 4 on a scale of 1-4, which noted that if Mr. Collier "had not been discovered [he] would have died."  Notes indicate intensive medical/surgical management and hospitalization was required.

21.     On February 23, 2017, Mr. Collier attempted suicide by stabbing himself in the neck. The medical severity of this attempt was rated a 3 on a scale of 1-4, which again noted Mr. Collier "would have died" if he was not discovered.

22.     On July 29, 2019, Mr. Collier cut the side of his neck with the intent to cause clots which would "cause a stroke."   This attempt was a rated a "2" in terms of medical severity on a scale of 1-4.

23.     On August 27, 2019, Mr. Collier attempted suicide by cutting.  The medical severity was rated as a 3 on a scale of 1-4.

24.     Mr. Collier again attempted suicide on May 23, 2020 by cutting his neck with a pair of broken toenail clippers.  Mr. Collier specifically told CDCR medical personnel at the time, "I was suicidal."  The wound was deep, and both sides of his neck required sutures. Mr. Collier also cut his left armpit during this same attempt.

25.     Mr. Collier also had a long history of self-harm that stopped short of active attempts at suicide as well.  Records show he engaged in numerous instances of self-harm while in the custody of CDCR, most typically through cutting, on the following dates:  February 10, 2015; March 10, 2015; September 4, 2016; October 11, 2016; October 13, 2016; February 13, 2017; February 14, 2017; July 29, 2019; August 27, 2019 and March 30, 2020.

26.     The most severe instance of self-harm occurred when Mr. Collier attempted to castrate himself with a piece of plastic on August 27, 2019.

27.     On March 30, 2020, Mr. Collier cut his left inner calf, which caused tissue damage. The wound was reportedly four (4) centimeters by one (1) centimeter and gaping. This laceration required four staples.

28.     Mr. Collier also had a history of conducting hunger strikes to "starve himself."  In addition, Mr. Collier would eat paper in an effort to choke himself to death.

29.     Mr. Collier also exhibited grandiose delusions and reported hearing the voice of God, and being on a mission to uphold the word of God and the Bible, which according to Mr. Collier, may include violence.  These delusions manifested when Mr. Collier attempted to self-castrate himself, citing his religion "telling" him to do it and, citing the Bible, stating to "get rid of the thing causing [masturbation]."

30.     Mr. Collier also had significant and severe physical health issues.  In particular, records are replete with instances of Mr. Collier's severe, chronic, and intractable lower back pain due to "failed back surgery syndrome," following discectomies in his lower back.  At times, Mr. Collier walked with a cane.  However, due to altercations Mr. Collier was involved in, his cane was taken away, and he suffered frequent falls.  Mr. Collier had requested a wheelchair, but was not given one.

*Defendants Knew of This History*

31.     Defendants were well aware of this history.  The autopsy report for Mr. Collier states that Defendant Hodges advised responding officers that Mr. Collier had previous suicide attempts along with what method was used, demonstrating his knowledge of Mr. Collier's heightened risk for suicide.  Plaintiffs are informed and believe, and thereon allege, that Defendant Martinez was working alongside Defendant Hodges on the unit in which Mr. Collier was housed on the same day, and therefore was also aware of Mr. Collier's history of suicide attempts.

32.     The Defendants knew Mr. Collier was at high risk for suicide.  The Defendants also knew, or recklessly disregarded the knowledge, that Mr. Collier was prescribed many psychiatric mediation—at least nineteen (19) during his time in CDCR—to treat his mental health disorders.  Similarly, the Individual Defendants knew, or recklessly disregarded the knowledge, that Mr. Collier had a prior history of suicide attempts, multiple instances of self-harm, and was a danger to himself.

33.     Mr. Collier also routinely told prison staff he was in excruciating pain due to his Failed Back Surgery Syndrome, chronic low back pain, and prior surgery to his testicles.

34.     As a result of the deliberate indifference of Defendants, including inadequate screening, inadequate monitoring, and the deprivation of pain medications, Mr. Collier died by suicide on October 17, 2020, by cutting his left forearm, thereby dying of exsanguination.  He was in a cell by

himself, and had not been checked on for many hours, despite the fact Mr. Collier's mental health disorders were readily apparent to even a casual observer.

*FAILURE TO ADEQUATELY SUPERVISE AND MONITOR*

35.    Prison records reveal the following information about Mr. Collier:

      a.    He was under the care of a doctor for medical and psychiatric reasons;

      b.    He was taking prescribed medicine;

      c.    He was suffering from chronic pain;

      d.    He had mental health problems;

      e.    He was a victim of sexual and physical abuse;

      f.    ***He had previously attempted suicide multiple times***;

      g.    He had engaged in repeated instances of self-harm; and

      h.    He was under the care of a psychologist.

36.    Despite the fact Mr. Collier previously attempted suicide and had psychiatric issues, Mr. Collier was placed in a single cell without adequate monitoring or supervision.  He was allowed access to a sharp instrument—a nail clipper—which is the same instrument he had used in prior self-injury and suicide attempts.

37.    On October 17, 2020, Defendants saw Mr. Collier "in the morning hours," when he was given breakfast.  Mr. Collier did not report for the noon inmate count.  However, despite missing count, no further checks were conducted on Mr. Collier until well into the late afternoon at approximately 3:32 p.m.  It was at this time Defendants found Mr. Collier on his cell floor, unresponsive.  They called for medical aid, and Mr. Collier was transported to the Treatment and Triage Area at approximately 3:40 p.m.  Mr. Collier was pronounced dead at 4:00 p.m.

38.    Deputy Coroner Mary Abidayo responded to Mr. Collier's cell at 6:35 p.m., where she noticed broken nail clippers on Mr. Collier's desk with blood present on them.  Defendants knew, or recklessly disregarded the knowledge, that Mr. Collier had self-inflicted injuries from nail clippers on prior occasions.

39.    Plaintiffs are informed and believe and thereon allege that a history of prior suicide attempts places an individual at increased risk of attempting suicide again in the future.  Plaintiffs are

informed and believe and thereon allege the Defendants were each aware of, or recklessly disregarded, the fact Mr. Collier had a history of multiple prior suicide attempts, which placed him at an increased risk of attempting suicide again. Defendants affirmatively recognized this risk, as evidenced by their statements documented in Mr. Collier's autopsy report.

40. A basic physical examination of Mr. Collier revealed significant evidence of prior suicide attempts and instances of self-harm. Mr. Collier's autopsy indicated he had old scars on his neck, on both sides; scratches on his forearms; abrasions on his left flank; scratches on his feet; dried blood in the nail beds of his left hand; and an open laceration to his right forearm. According to the autopsy report, the fatal wound was inflicted on his left forearm.

41. These scars and old injuries would have been readily visible to any correctional officer interacting with Mr. Collier. Plaintiffs allege, on information and belief, that Defendants had seen these scars and understood them to be from prior suicide attempts.

42. Plaintiffs are informed and believe and thereon allege Defendants Hodges and Martinez knew and consciously disregarded the obvious physical signs and reported information that indicated Mr. Collier was at increased risk of suicide, and did not adequately supervise or monitor Mr. Collier, causing his death.

*FAILURE TO ADEQUATELY TREAT HEALTH AND MENTAL HEALTH ISSUES*

43. Mr. Collier had an extensive history of both physical and mental health issues, including severe lower back pain that was inadequately treated.

44. Records reflect Mr. Collier advised prison officials on numerous occasions about his intractable back pain, and they refused treatment, including appropriate pain management.

45. Records also reflect Mr. Collier cut himself at times in order to distract himself from his back pain, and indicated his untreated back pain was part of the reason for his suicide attempts.

46. Plaintiffs are informed and believe and thereon allege that, had Doe Defendants provided adequate treatment for both his mental and physical ailments, Mr. Collier would not have died by suicide.

///

///

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE EIGHTH AMENDMENT PURSUANT TO 42 U.S.C. § 1983, CALIFORNIA CIVIL CODE § 52.1, AND WRONGFUL DEATH

*FAILURE TO APPROPRIATELY HOUSE DECEDENT AND RESTRICT DECEDENT'S PERSONAL ITEMS (DOE DEFENDANTS)*

47.     On information and belief, Plaintiffs believe and thereon allege that Mr. Collier was not appropriately housed, because Defendants failed to prevent Mr. Collier from possessing sharp personal items with which he could harm himself.

48.     On information and belief, Plaintiffs believe and thereon allege Mr. Collier was not housed in a manner suitable for a person at risk for suicide, particularly with repeated prior instances of attempted suicide by cutting.  On information and belief, Plaintiffs allege that housing a potentially suicidal inmate alone increases the risk of that inmate dying by suicide, because it increases the chance any suicide attempt will be successful, as there is less opportunity for intervention and assistance.

49.     CDCR records also note the cell contained nail clippers, which Mr. Collier had specifically used to self-harm in the past.

50.     Information about which officers within the prison were responsible for the decisions about Mr. Collier's housing and personal items is not yet available.  Plaintiffs are informed and believe and thereon allege that one or more Doe Defendants transferred Mr. Collier to the cell in which he ultimately killed himself, and failed to prevent his access to sharp instruments, despite knowing or recklessly disregarding the risk of suicide.

**FIRST CAUSE OF ACTION – DELIBERATE INDIFFERENCE IN VIOLATION OF THE EIGHTH AMENDMENT (Plaintiffs, as successors in interest to Decedent against all Defendants in their personal capacities)**

51.     Plaintiffs re-assert and re-allege Paragraphs 1 to 49, as though fully set forth herein.

52.     Defendants Hodges and Martinez were deliberately indifferent to the well-being of Mr. Collier.  Defendants knew of Mr. Collier's history of previous suicide attempts, the multiple reports documenting his mental health disorders, which included psychotic behavior and grandiose delusions, and Mr. Collier's own expression of his intent to commit suicide.

53.     Specifically, Defendants admit they were aware of at least two (2) prior incidents involving Mr. Collier attempting suicide through cutting with sharp objects.

54.     Despite having knowledge of the increased risk of suicide Mr. Collier faced, Defendants Hodges and Martinez, and DOES 1 through 10, inclusive, were deliberately indifferent to

the well-being of Mr. Collier, because they failed to adequately monitor and supervise his activities while in custody.

55.    Notably, Defendants failed to check on Mr. Collier to ensure he was alive, safe, and uninjured between the time breakfast was served on the morning of October 17, 2020 and 3:32 p.m.— a period of approximately eight or nine hours—despite the fact Mr. Collier missed the noon inmate count.

56.    This failure to adequately supervise Mr. Collier, including by conducting regular cell checks, directly and proximately caused Mr. Collier's death.  Mr. Collier thereby suffered pecuniary and non-pecuniary damages in an amount to be determined at trial.

57.    The conduct of Defendants was cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution and was willful, wanton, malicious, and done with a deliberate indifference for the rights and safety of Mr. Collier, and therefore warrants an award of exemplary and punitive damages.

**SECOND CAUSE OF ACTION - DELIBERATE INDIFFERENCE TO MEDICAL AND MENTAL HEALTH NEEDS IN VIOLATION OF THE EIGHTH AMENDMENT (Plaintiffs Susan Ottele and William Collier, Jr., as successors in interest to Decedent against DOES 1 through 10, inclusive, in their personal capacities)**

58.    Plaintiffs re-assert and re-allege Paragraphs 1 to 56, as though fully set forth herein.

59.    Mr. Collier was an inmate at the Kern Valley State Prison, and accordingly had a right to receive adequate physical and mental health care from Defendants under the Eighth Amendment.

60.    Defendants knew Mr. Collier was at a high risk for suicide, given his documented past suicide attempts and instances of self-harm.

61.    Plaintiffs allege that Doe Defendants were deliberately indifferent to Mr. Collier's physical and mental health needs.  Specifically, Defendants failed to adequately treat Mr. Collier's mental illnesses and failed to provide him with adequate health care to remedy his chronic pain.

62.    As a direct and proximate cause of the Doe Defendants' failures to adequately treat Mr. Collier's mental illness and chronic pain, Mr. Collier died by suicide on October 17, 2020, and thereby suffered pecuniary and non-pecuniary damages in an amount to be determined at trial.

63.     Plaintiffs seek leave to conduct discovery to identify the Doe Defendants directly responsible for Mr. Collier's physical and mental health care during his incarceration at Kern Valley State Prison.

64.     The conduct of Defendants was cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution and was willful, wanton, malicious, and done with a deliberate indifference for the rights and safety of Mr. Collier, and therefore warrants an award of exemplary and punitive damages.

**THIRD CAUSE OF ACTION – DELIBERATE INDIFFERENCE UNDER THE EIGHTH AMENDMENT; INADEQUATE HOUSING (Plaintiffs Susan Ottele and William Collier, Jr., as successors in interest to Decedent against DOES 1 through 10, inclusive, in their personal capacities)**

65.     Plaintiffs reassert and reallege Paragraphs 1 to 63, as though fully set forth herein.

66.     Mr. Collier was housed in a single cell, despite a significant history of suicide attempts.

67.     On information and belief, Plaintiffs allege that individuals housed alone are at significantly greater risk of dying by suicide, because there is no one present to intervene or summon assistance, if necessary.

68.     Doe Defendants knew Mr. Collier was at a serious risk of death by suicide, given his numerous prior suicide attempts, his history of self-injury, his inadequately treated mental health issues, and his inadequately treated chronic pain.

69.     Doe Defendants nevertheless housed Mr. Collier in a cell by himself, thereby placing him at greater risk of dying by suicide.

70.     As a direct and proximate cause of Doe Defendants' failure to adequately house Mr. Collier, Mr. Collier died by suicide, and thereby suffered pecuniary and non-pecuniary losses in an amount to be determined at trial.

71.     Plaintiffs seek leave to conduct discovery to identify the Doe Defendants directly responsible for Mr. Collier's housing during his incarceration at Kern Valley State Prison.

72.     The conduct of Doe Defendants was cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution and was willful, wanton, malicious, and done with a

1  deliberate indifference for the rights and safety of Mr. Collier, and therefore warrants an award of

2  exemplary and punitive damages.

3  **FOURTH CAUSE OF ACTION – FOURTEENTH AMENDMENT SUBSTANTIVE DUE**

4  **PROCESS CLAIM FOR LOSS OF COMPANIONSHIP (Plaintiffs Susan Ottele and William**

5  **Collier, Jr., each on their own behalf, against all Defendants, in their personal capacities)**

6  73.    Plaintiffs re-assert and re-allege Paragraphs 1 to 71, as though fully set forth herein.

7  74.    Defendants' actions in this case—including but not limited to: (1) the failure to

8  adequately monitor and supervise Mr. Collier; (2) the failure to provide appropriate medical and

9  mental health care for Mr. Collier to treat his mental illness and chronic pain; and (3) the failure to

10  adequately house Mr. Collier in order to minimize the risk of him dying by suicide—were the direct

11  and proximate causes of Mr. Collier's death by suicide on October 17, 2020.

12  75.    These actions, both individually and collectively, shock the conscience, and evidence

13  both deliberate indifference and reckless disregard to the mental health and medical needs of Mr.

14  Collier.

15  76.    Through these actions, Defendants have deprived Plaintiffs Susan Ottele and William

16  Collier, Jr. of the love, companionship, comfort, care, assistance, protection, affection, society,

17  support, training, and guidance of their son, Adam Collier.

18  77.    Plaintiffs have suffered pecuniary and non-pecuniary losses in an amount to be

19  determined at trial.

20  **FIFTH CAUSE OF ACTION – CIVIL CODE § 52.1 (Plaintiffs Susan Ottele and William**

21  **Collier, Jr., as successors in interest to Decedent against all Defendants)**

22  78.    Plaintiffs re-assert and re-allege Paragraphs 1 to 76, as though fully set forth herein.

23  79.    Plaintiffs allege Defendants interfered with Mr. Collier's constitutional right to receive

24  adequate mental and physical health care while incarcerated through their deliberate indifference to

25  Mr. Collier's risk of suicide.   Specifically, Defendants (1) failed to appropriately monitor and

26  supervise Mr. Collier; (2) failed to provide adequate mental or medical health care to treat his mental

27  illness and chronic pain; and (3) failed to appropriately house Mr. Collier to minimize the risk of him

28  dying by suicide.

{8727/002/01414101.DOCX}                                    11

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE EIGHTH AMENDMENT PURSUANT TO 42 U.S.C.
§ 1983, CALIFORNIA CIVIL CODE § 52.1, AND WRONGFUL DEATH

80. Defendants' actions directly and proximately caused Mr. Collier's death by suicide, and Mr. Collier suffered pecuniary and non-pecuniary losses in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION – WRONGFUL DEATH and SURVIVAL ACTION UNDER CCP §§ 377.30, 377.60 et seq. (Plaintiffs Susan Ottele and William Collier, Jr., on behalf of themselves and as successors in interest to Decedent against all Defendants)**

81. Plaintiffs re-assert and re-allege Paragraphs 1 to 79, as though fully set forth herein.

82. Plaintiffs Susan Ottele and William Collier, Jr. bring this cause of action both on their own behalf under Code of Civil Procedure § 377.60 and as successors in interest to the Decedent, Mr. Collier, under Code of Civil Procedure § 377.30.

83. As a direct and proximate result of the negligence, wrongful acts, conduct, and omissions of the Defendants, and each of them, Plaintiffs have been deprived of the decedent's love, companionship, comfort, care, assistance, protection, affection, society, support, training, and guidance. Susan Ottele and William Collier, Jr. are the parents of the decedent, and are therefore people entitled to recover wrongful death damages pursuant to California Code of Civil Procedure § 377.60 et seq. Plaintiffs have suffered pecuniary and non-pecuniary losses in an amount to be determined at trial.

84. As a direct and proximate result of the negligence, wrongful acts, conduct, and omissions of the Defendants, and each of them, Mr. Collier suffered severe and painful injuries, which resulted in recoverable legal damages prior to Mr. Collier's death. Plaintiffs have the authority to commence a survival action on decedent's behalf pursuant to California Code of Civil Procedure § 377.30 et seq.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for judgment and an order against each Defendant as follows:

1. On each of the causes of action, for damages, including but not limited to damages for economic harm, non-economic harm, pain, suffering, emotional distress, and punitive damages, according to proof at trial;

2. On each of the causes of action, for injunctive relief as may be shown to be proper;

3.      On each of the causes of action, for attorneys' fees, costs, and interest, as authorized by law; and

4.      Any other relief that this Court deems just and proper.


Dated:  May 25, 2022.                          WANGER JONES HELSLEY PC


By: __/s/ Christopher A. Lisieski _____
Christopher A. Lisieski
Attorney for Plaintiffs


## REQUEST FOR JURY TRIAL

Plaintiffs request a trial by jury for all causes of action to which they are entitled to a jury.


Dated:  May 25, 2022.                          WANGER JONES HELSLEY PC


By:__/s/ Christopher A. Lisieski_____
Christopher A. Lisieski
Attorney for Plaintiffs

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE EIGHTH AMENDMENT PURSUANT TO 42 U.S.C.
§ 1983, CALIFORNIA CIVIL CODE § 52.1, AND WRONGFUL DEATH

# AFFIDAVIT OF SUSAN OTTELE

I, Susan Ottele, hereby declare as follows:

1.      I am the mother of Adam J. Collier. I am familiar with Adam's life and history, because of this relationship with him. I have personal knowledge of and am competent to testify to the facts set forth below.

2.      Adam J. Collier is the decedent in this matter. Adam died on October 17, 2020 in Kern Valley State Prison in Delano, California.

3.      No proceeding is now pending in California for administration of Adam's estate.

4.      I am the decedent's successor in interest (as defined in Section 377.11 of the California Code of Civil Procedure), along with his father, William J. Collier, Jr. Together, we succeed to the decedent's interest in the action or proceeding.

5.      No other person has a superior right to commence the action or proceeding or to be substituted for the decedent in the pending action or proceeding.

6.      I affirm under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 24th day of May, 2022 at ___McMinnville___, Oregon.

_Susan Ottele_

Susan Ottele

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE EIGHTH AMENDMENT PURSUANT TO 42 U.S.C. § 1983, CALIFORNIA CIVIL CODE § 52.1, AND WRONGFUL DEATH

# AFFIDAVIT OF WILLIAM J. COLLIER JR.

I, William J. Collier, Jr., hereby declare as follows:

1.      I am the father of Adam J. Collier. I am familiar with Adam's life and history, because of this relationship with him. I have personal knowledge of and am competent to testify to the facts set forth below.

2.      Adam J. Collier is the decedent in this matter. Adam died on October 17, 2020 in Kern Valley State Prison in Delano, California.

3.      No proceeding is now pending in California for administration of Adam's estate.

4.      I am the decedent's successor in interest (as defined in Section 377.11 of the California Code of Civil Procedure), along with his mother, Susan Ottele. Together, we succeed to the decedent's interest in the action or proceeding.

5.      No other person has a superior right to commence the action or proceeding or to be substituted for the decedent in the pending action or proceeding.

6.      I affirm under penalty of perjury under the laws of the State of California that the foregoing is true and correct.


Executed this 24th day of May, 2022 at ____McMinnville____, Oregon.


Wm. J. Collier Jr.
William J. Collier, Jr.

{8727/002/01413563.DOCX}                         15

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE EIGHTH AMENDMENT PURSUANT TO 42 U.S.C.
§ 1983, CALIFORNIA CIVIL CODE § 52.1, AND WRONGFUL DEATH

Exhibit "A"

**GOVERNMENT CLAIM**

DGS ORIM 006 (Rev. 08/19)

## CLAIMANT INFORMATION

| | | |
|---|---|---|
| LAST NAME <br> Collier | FIRST NAME <br> Adam | MIDDLE INITIAL <br> J |

| | |
|---|---|
| INMATE OR PATIENT IDENTIFICATION NUMBER (if applicable) <br> #AP7203 | BUSINESS NAME(if applicable) <br> N/A |

| | |
|---|---|
| TELEPHONE NUMBER <br> See attached for contact information | EMAIL ADDRESS <br> See attached for contact information |

| | | | |
|---|---|---|---|
| MAILING ADDRESS <br> See attached for contact information | CITY | STATE | ZIP |

| | |
|---|---|
| IS THE CLAIMANT UNDER 18 YEARS OF AGE? <br> ☐ Yes ☑ No | INSURED NAME(Insurance Company Subrogation) |

| | | |
|---|---|---|
| IS THIS AN AMENDMENT TO A PREVIOUSLY EXISTING CLAIM? <br> ☑ Yes ☐ No | EXISTING CLAIM NUMBER (if applicable) <br> N/A | EXISTING CLAIMANT NAME(if applicable) <br> Collier, Adam J., et al. (see attached) |

## ATTORNEY OR REPRESENTATIVE INFORMATION

| | | |
|---|---|---|
| LAST NAME <br> Lisieski | FIRST NAME <br> Christopher | MIDDLE INITIAL <br> A |

| | |
|---|---|
| TELEPHONE NUMBER <br> 559-233-4800 | EMAIL ADDRESS <br> clisieski@wjhattorneys.com |

| | | | |
|---|---|---|---|
| MAILING ADDRESS <br> 265 E. River Park Circle, Suite 310 | CITY <br> Fresno | STATE <br> CA | ZIP <br> 93720 |

## CLAIM INFORMATION

| | |
|---|---|
| STATE AGENCIES OR EMPLOYEES AGAINST WHOM THE CLAIM IS FILED <br> CDCR, Kern Valley State Prison, Oscar Martinez, Aaron Hodges, et al. | DATE OF INCIDENT <br> 10/17/2020 |

LATE CLAIM EXPLANATION (Required, if incident was more than six months ago)

N/A

| | |
|---|---|
| DOLLAR AMOUNT OF CLAIM <br> See attached | CIVIL CASE TYPE(Required, if amount is more than $10,000) <br> ☐ Limited ($25,000 or less) ☑ Non-Limited (over $25,000) |

DOLLAR AMOUNT EXPLANATION
See attached

INCIDENT LOCATION
See attached

SPECIFIC DAMAGE OR INJURY DESCRIPTION

See attached

CIRCUMSTANCES THAT LED TO DAMAGE OR INJURY

See attached

EXPLAIN WHY YOU BELIEVE THE STATE IS RESPONSIBLE FOR THE DAMAGE OR INJURY

# See attached

**GOVERNMENT CLAIM**

DGS ORIM 006 (Rev. 08/19)

---

## AUTOMOBILE CLAIM INFORMATION

| DOES THE CLAIM INVOLVE A STATE VEHICLE? | VEHICLE LICENSE NUMBER (if known) | STATE DRIVER NAME (if known) |
|---|---|---|
| ☐ Yes   ☒ No | N/A | N/A |

| HAS A CLAIM BEEN FILED WITH YOUR INSURANCE CARRIER? | INSURANCE CARRIER NAME | INSURANCE CLAIM NUMBER |
|---|---|---|
| ☐ Yes   ☒ No | N/A | N/A |

| HAVE YOU RECEIVED AN INSURANCE PAYMENT FOR THIS DAMAGE OR INJURY? | AMOUNT RECEIVED (if any) | AMOUNT OF DEDUCTIBLE (if any) |
|---|---|---|
| ☐ Yes   ☒ No | N/A | N/A |

## NOTICE AND SIGNATURE

I declare under penalty of perjury under the laws of the State of California that all the information I have provided is true and correct to the best of my information and belief. I further understand that if I have provided information that is false, intentionally incomplete, or misleading I may be charged with a felony punishable by up to four years in state prison and/or a fine of up to $10,000 (Penal Code section 72).

| SIGNATURE | PRINTED NAME | DATE |
|---|---|---|
| *Christopher A. Lisieski (signature)* | Christopher A. Lisieski | 04/08/2021 |

## INSTRUCTIONS

- Include a check or money order for $25, payable to the State of California.
    - $25 filing fee is not required for amendments to existing claims.
- Confirm all sections relating to this claim are complete and the form is signed.
- Attach copies of any documentation that supports your claim. Do not submit originals.

Mail the claim form and all attachments to:
    Office of Risk and Insurance Management
    Government Claims Program
    P.O. Box 989052, MS414
    West Sacramento, CA 95798-9052

Claim forms can also be delivered to:
    Office of Risk and Insurance Management
    Government Claims Program
    707 3rd Street, 1st Floor
    West Sacramento, CA 95605
    1-800-955-0045

### Department of General Services Privacy Notice on Information Collection

This notice is provided pursuant to the Information Practices Act of 1977, California Civil Code Sections 1798.17 & 1798.24 and the Federal Privacy Act (Public Law 93-579).

The Department of General Services (DGS), Office of Risk and Insurance Management (ORIM), is requesting the information specified on this form pursuant to Government Code Section 905.2(c).

The principal purpose for requesting this data is to process claims against the state. The information provided will/may be disclosed to a person, or to another agency where the transfer is necessary for the transferee-agency to perform its constitutional or statutory duties, and the use is compatible with a purpose for which the information was collected and the use or transfer is accounted for in accordance with California Civil Code Section 1798.25.

Individuals should not provide personal information that is not requested.

The submission of all information requested is mandatory unless otherwise noted. If you fail to provide the information requested to DGS, or if the information provided is deemed incomplete or unreadable, this may result in a delay in processing.

**Department Privacy Policy**
The information collected by DGS is subject to the limitations in the Information Practices Act of 1977 and state policy (see State Administrative Manual 5310-5310.7). For more information on how we care for your personal information, please read the DGS Privacy Policy.

**Access to Your Information**
ORIM is responsible for maintaining collected records and retaining them for 5 years. You have a right to access records containing personal information maintained by the state entity. To request access, contact:

**DGS ORIM**
**Public Records Officer**
**707 3rd St., West Sacramento, CA 95605**

**(916) 376-5300**

**CLAIMS OF SUSAN OTTELE, WILLIAM COLLIER, AND THE ESTATE OF ADAM
COLLIER (DECEASED) AND DEMAND FOR PRESERVATION OF EVIDENCE**
*Submitted pursuant to California Government Code § 910 et seq. to the Office of Risk and
Insurance Management on behalf of the California Department of Corrections and
Rehabilitations, and Officers Anthony Sotello, Oscar Martinez, Aaron Hodges, and Other
Unknown Officers*

**Names of Claimants:**

The estate of Adam Collier (decedent).
Susan Ottele, who is the mother of Adam Collier.
William Collier, who is the father of Adam Collier.
Under California Code of Civil Procedure § 377.11, Susan Ottele and William Collier are proper
Successors in Interest to the Estate of Adam Collier, deceased.

This is an amendment of prior claims submitted for Adam Collier, Susan Ottele, and William
Collier via certified mail on March 8, 2021. No Claim Number has yet been issued for this
claim, to the Claimants' knowledge.

**Contact Information:**

Ms. Ottele and Mr. Collier may be contacted through counsel:

Chris Lisieski
Wanger Jones Helsley PC
265 E. River Park Circle, Suite 310
Fresno, California 93720

Phone: 559-233-4800
Fax:    559-233-9330
E-mail:clisieski@wjhattorneys.com

**Description of Claim for Damages**

Adam Collier (#AP7023) died on October 17, 2020 of apparent suicide. Preliminary
information shows that the last time Adam was seen was at breakfast on that date. He did not
report for noon count. His body was apparently located in his cell at 3:32 p.m. by Officers Oscar
Martinez and Aaron Hodges. This would have been approximately nine hours after he was
apparently last seen by any correctional officers, and more than three and a half hours after he
missed count.

Adam had a long, significant history of mental illness and prior suicide attempts, of
which Officers Martinez and Hodges, and other officers who were working, would have been
well aware. Indeed, Adam had highly visible scars on both sides of his neck from one such prior

attempt. Adam had prior diagnoses including both bipolar disorder and post-traumatic stress disorder (PTSD), and had severe, untreated physical pain from successive failed back operations.

On information and belief, the California Department of Corrections and Rehabilitation, Officers Martinez and Hodges, and other officers whose identity is not yet known (collectively, "Respondents"), knew and/or had reason to know that Adam was suicidal and/or at a serious risk of dying by suicide. Respondents were deliberately indifferent to Adam's serious and immediate mental and physical health needs, including his suicidality, mental illness, and physical pain. Respondents failed to appropriately house Adam; failed to provide appropriate mental health care treatment to Adam, given his history of suicide attempts; failed to adequately treat Adam's physical pain; failed to prevent Adam from accessing sharp instruments, with which he had previously attempted suicide and which were apparently used in his ultimate suicide. Respondents also failed to adequately monitor or supervise Adam, and indeed even failed to find him for more than three hours after he was absent from count.

These actions, and others not yet known, show deliberate indifference to Adam's mental and physical health needs, and ultimately caused his death by suicide.

Respondents' acts and failures to act were objectively unreasonable under the circumstances, done under color of law and within the course and scope of their employment, and were the proximate cause of Adam's death. These actions and omissions by CDCR, its staff and agents, including Officers Martinez and Hodges, and others not yet identified, constitute violations of the United States and California Constitutions, the Americans with Disabilities Act (ADA), Civil Code §§ 51, 51.7, 52.1, 52, 54 and 54.1 *et seq.*, Government Code § 845.6, other federal and state laws, intentional infliction of emotional distress, negligence, and other common law and statutory causes of action arising from Adam's mistreatment and death.

**Claimants' Injuries and Amount of Damages Claimed:**

Adam was wrongfully and unconstitutionally killed, suffering a loss of life, conscious pain and suffering, and medical, funeral, and burial expenses. Susan Ottele and William Collier also suffered from Adam's death, and seek their own personal damages, including pain and suffering, emotional distress, and other economic and non-economic damages. Susan Ottele and William Collier seek all damages, costs, fees, and penalties allowed under California Code of Civil Procedure § 377 *et seq.*; Code of Civil Procedure § 1021.5; California Civil Code §§ 51, 51.7, 52.1, 52, 54, and 54.1, *et seq.*; Government Code § 845.6; 42 U.S.C. §§ 1983 and 1988; the ADA, and as otherwise allowed by law. Claimants' damages are in excess of the minimum jurisdictional limits of the Superior Courts of California (i.e., a non-limited civil case) and include damages for wrongful death, survival claims, loss of life, conscious pain and suffering, emotional distress, loss of companionship, society, services, relationship, and support, medical and funeral expenses, loss of constitutional rights, and exemplary, punitive and statutory damages.

/ / /

/ / /

**Identities of Public Employees Involved**:

Respondents have not provided any information about any investigation into Adam's death, nor any information about his mental or physical health care and treatment while in the custody of CDCR.  As such, Claimants are presently unaware of all public employees who may have been involved in proximately causing Adam's death.  However, Claimants are aware that Officers Gonzalez and Hodges were apparently on duty and staffing the area of the jail in which Adam was housed, and therefore knew or should have known of the need to adequately supervise Adam and prevent harm to him.

For any further information, please contact Claimants' attorney, Chris Lisieski, at Wanger Jones Helsley PC, 265 E. River Park Circle, Suite 310, Fresno, California 93720, (559) 233-4800.

## DEMAND FOR PRESERVATION OF EVIDENCE

**Demand is hereby made to preserve all evidence and records related to this incident and any investigation of this incident, including but not limited to: all "writings" within the broadest definition of Evidence Code § 250; dispatch tapes; recordings; video recordings; photographs; physical evidence; CAD reports and information; incident reports; use of force reports; medical records; any Taser record including all Taser dataport logs and data; physical property; all investigation records, including investigators' notes, email, electronic documents, statements, other notes, correspondence, and memoranda; and all things related to this claim and the incident described herein as material evidence to the "Claim of Adam Collier, et al." and Claimants' potential claims under federal and state law.**  You are further required to preserve all such recordings pursuant to California Government Code § 34090.6.  If you have any questions about the recordings, documents, or other items at issue, please contact Chris Lisieski at the above address and telephone number before destroying any tapes, recording, documents, evidence, writings, or other items that may relate to this Claim or other potential claims brought by or on behalf of the Claimants.

Dated: April 8, 2021

WANGER JONES HELSLEY PC

Christopher A. Lisieski
Attorney for Claimants

## **PROOF OF SERVICE**

My business address is 265 East River Park Circle, Suite 310, Post Office Box 28340, Fresno, California 93729. I am employed in Fresno County, California. I am over the age of 18 years and am not a party to this case.

On the date indicated below, I served the foregoing document(s) described as **STATE OF CALIFORNIA GOVERNMENT CLAIM** on all interested parties in this action by placing a true copy thereof enclosed in sealed envelopes addressed as follows:

Office of Risk and Insurance Management
Government Claims Program
P.O. Box 989052, MS414
West Sacramento, CA 95789-9052

___X___   (BY CERTIFIED MAIL)   I am readily familiar with the business' practice for collection and processing of correspondence for mailing, and that correspondence, with postage thereon fully prepaid, will be deposited with the United States Postal Service on the date noted below in the ordinary course of business, at Fresno, California.

_____   (BY FACSIMILE)   I caused such document(s) to be transmitted to the addressee(s) facsimile number(s) noted above. The facsimile machine I used complied with Rule 2003(3) and the transmission was reported as complete and without error.

_____   (BY ELECTRONIC SERVICE)   I caused the foregoing document(s) to be scanned into pdf format and sent via electronic mail to the electronic mail address(es) of the designated addressee(s).

_____   (BY OVERNIGHT COURIER)   I caused the above-referenced envelope(s) to be delivered to an overnight courier service for delivery to the addressee(s).

___X___   (STATE)   I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 8, 2021, at Fresno, California.

_Kimberley Dodd_
Kimberley Dodd

{8727/002/01223103.DOCX}

Exhibit "B"



**DGS** CALIFORNIA DEPARTMENT OF **GENERAL SERVICES**          **Governor Gavin Newsom**

09/08/2021

Chris Lisieski
Wanger Jones Helsley PC
265 E. River Park Circle, Suite 310
Fresno, CA 93720

RE:  Claim 21003144 for Estate of Adam Collier AP7023 against Department of Corrections and Rehabilitation

Dear Chris Lisieski,

Government Claims Program (GCP) staff completed its investigation of your claim and rejected it for the following reasons.

The claim involves complex issues that are beyond the scope of analysis and legal interpretation typically undertaken by the GCP.  Claims involving complex issues are best determined by the courts.  Therefore, staff did not make a determination regarding the merit of the claim, and it is being rejected so you can initiate court action if you choose to pursue this matter further.

If you choose to pursue court action in this matter, it is not necessary or proper to include the GCP in your lawsuit unless the GCP was identified as a defendant in your original claim.  Please consult Government Code section 955.4 regarding proper service of the summons.

If you have questions about this matter, please feel free to contact GCP by phone, mail, or email using the contact information below.   Please remember to reference the assigned claim number (21003144) in your communication.

Sincerely,

*Shm Umi*

Sheila Emami, Program Analyst
Government Claims Program
gcinfo@dgs.ca.gov

**WARNING:**  Subject to certain exceptions, you have only six (6) months from the date this notice was personally delivered or deposited in the mail to file a court action on this claim.  See Government Code Section 945.6.  You may seek the advice of an attorney of your choice in connection with this matter.  If you desire to consult an attorney, you should do so immediately.



**DGS** CALIFORNIA DEPARTMENT OF
**GENERAL SERVICES**                    Governor Gavin Newsom

## DECLARATION OF SERVICE BY U.S. MAIL

Name of Claimant:  Estate of Adam Collier
GCP File no.: 21003144

I am employed by the Government Claims Program. I am 18 years of age or older. I am familiar with the business practice at the Government Claims Program for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Government Claims Program is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business. On 09/08/2021, I served the attached letter by placing a true copy thereof enclosed in a sealed envelope in the internal mail collection system at the Government Claims Program, located at 707 Third Street, West Sacramento, CA 95605, addressed as follows:

Chris Lisieski
Wanger Jones Helsley PC
265 E. River Park Circle, Suite 310
Fresno, CA 93720

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on 09/08/2021, at West Sacramento, California.

*Sheila Emami (signature)*
_____
Sheila Emami



CALIFORNIA DEPARTMENT OF
GENERAL SERVICES

Governor Gavin Newsom

09/15/2021

Chris Lisieski
Wanger Jones Helsley PC
265 E. River Park Circle, Suite 310
Fresno, CA 93720

RE:  Claim 21003373 for William J. Collier, Jr. against Department of Corrections and Rehabilitation

Dear Chris Lisieski,

Government Claims Program (GCP) staff completed its investigation of your claim and rejected it for the following reasons.

The claim involves complex issues that are beyond the scope of analysis and legal interpretation typically undertaken by the GCP.  Claims involving complex issues are best determined by the courts.  Therefore, staff did not make a determination regarding the merit of the claim, and it is being rejected so you can initiate court action if you choose to pursue this matter further.

If you choose to pursue court action in this matter, it is not necessary or proper to include the GCP in your lawsuit unless the GCP was identified as a defendant in your original claim.  Please consult Government Code section 955.4 regarding proper service of the summons.

If you have questions about this matter, please feel free to contact GCP by phone, mail, or email using the contact information below.   Please remember to reference the assigned claim number (21003373) in your communication.

Sincerely,

Sheila Emami, Program Analyst
Government Claims Program
gcinfo@dgs.ca.gov

**WARNING:**  Subject to certain exceptions, you have only six (6) months from the date this notice was personally delivered or deposited in the mail to file a court action on this claim.  See Government Code Section 945.6.  You may seek the advice of an attorney of your choice in connection with this matter.  If you desire to consult an attorney, you should do so immediately.

**Office of Risk and Insurance Management** | *State of California* | *Government Operations Agency*
*707 3rd Street, 1st Floor* | *West Sacramento, CA 95605* | *t 800.955-0045 f 916-376-6387*