UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN OTTELE, on her own behalf and on behalf of the ESTATE OF ADAM J. COLLIER,<br><br>Plaintiff,<br><br>v.<br><br>OSCAR MARTINEZ AND AARON HODGES,<br><br>Defendants. | Case No. 1:22-cv-00187-JLT-CDB<br><br>FINDINGS AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. 57)<br><br>**14-DAY OBJECTION PERIOD** |

Plaintiff Susan Ottele is the mother of Adam Collier (Collier or Decedent), who died by suicide while incarcerated at Kern Valley State Prison in Delano, California, on October 17, 2020. Plaintiff filed the initial complaint on February 14, 2022 (Doc. 1), and the operative First Amended Complaint (FAC) on May 25, 2022. (Doc. 13). Plaintiff raises claims pursuant to 42 U.S.C. § 1983 for deliberate indifference against correctional officers Oscar Martinez and Aaron Hodges.[1] Plaintiff also raises Fourteenth Amendment substantive due process claims for loss of companionship, as well as California state law claims for failing to provide the Decedent with adequate mental and physical health care (Cal. Civil Code § 52.1), and a wrongful death and survival action under C.C.P. §§ 377.30, 377.60 *et seq. Id.*

---

[1] On March 2, 2023, Defendants filed a Notice of Death indicating that Defendant Hodges died on January 25, 2023. (Doc. 33). Defendant Hodges has not been dismissed from or substituted in this action.

Pending before the Court is Defendants' motion for summary judgment, filed November 3, 2023.  (Doc. 57).  Plaintiff filed an opposition on November 17, 2023 (Doc. 59), and Defendants filed a reply on November 27, 2023.  (Doc. 60). Defendants' motion was referred by the assigned district judge to the undersigned for issuance of findings and recommendations on January 26, 2024. (Doc. 66).  Thereafter, the Court ordered Plaintiff to respond to certain evidentiary challenges raised in Defendants' reply brief (Doc. 67) and Plaintiff filed a response on February 2, 2024 (Docs. 68, 69). For the reasons set forth below, the undersigned recommends that Defendants' motion for summary judgment be granted.[2]

## BACKGROUND

Adam J. Collier was an inmate at Kern Valley State Prison ("KVSP") at the time of his passing on October 17, 2020. (Doc. 13 ¶ 1). Collier entered the custody of the California Department of Corrections and Rehabilitation ("CDCR") on March 21, 2016, and was transferred to KVSP on March 10, 2020. (Doc. 59-4 p. 101).[3]  Collier has a long-documented history of suicide attempts via various methods. According to CDCR records, those methods include attempted overdose by ingesting pills in 2006 (listed as "severe), stabbing himself in the neck in February 2017 ("moderate"), cutting his neck with a paperclip in July 2019 ("minor-superficial") as well as an unspecified attempt to cut himself in August 2019 ("moderate").  (*Id.* p. 12).

Notably, on May 23, 2020, Collier committed self-harm ("minor-superficial") by using his toenail clippers to excoriate the top layer of his neck as well as the skin on his bicep. *Id*. According to a medical health form filed by KVSP staff on May 29, 2020, Collier denied intent to die, and stated that he harmed himself to avoid an unpaid drug debt. *Id*. at 12-13.  The form documented that Collier had a history of high rescue, low risk behaviors without intent to die. *Id*.

After Collier's suicide attempt in May 2020, he was transferred to Facility C, Building

---

[2] In her opposition to Defendants' motion for summary judgment, Plaintiff asserted the Court should stay the action until her then-pending appeal to the Ninth Circuit of this Court's ruling on her earlier motion to substitute named parties for Doe Defendants was resolved. (*See* Doc. 59 p. 29).  Since that time, the Ninth Circuit has dismissed the appeal for lack of jurisdiction, thus mooting the issue. *See Ottele v. Martinez et al.*, No. 23-3084 (Doc. 18).

[3] Docket filings cited herein are referred to by the CM/ECF-assigned pagination.

1   eight, cell 221. (Doc. 57-2 ¶ 1).  Cell 221 was located on the upper tier of the building.  *Id*.
2   Facility C is a special housing unit for inmates enrolled in the Enhanced Outpatient Program
3   ("EOP").  (Doc. 59-4 pp. 33, 84).  Inmates enrolled in the EOP receive a higher level of care from
4   correctional officers. (*Id.* p. 33). In turn, correctional officers assigned to Facility C receive
5   training on suicide prevention, including how to identify telltale signs of suicidal ideation. *Id*.

6   On October 17, 2020, Plaintiff was given breakfast in his cell during the morning hours.
7   (*Id.* p. 100).  Plaintiff did not report for the inmate count at noon.  *Id*.  Defendants Hodges and
8   Martinez worked as floor officers in KVSP in the same facility where Collier was housed.
9   Defendants' shift on October 17, 2020, lasted from 2:00 p.m. to 10:00p.m. (Doc. 59-2 p. 2; Doc.
10  59-4 p. 40).  Defendants were responsible for conducting periodic checks on the inmates housed
11  there. These checks included confirming whether the inmates were alive by visually observing
12  them and counting "breathing flesh." (Doc. 59-4 p. 41).  Defendant Martinez conducted the count
13  in the first tier of cells numbered 101 to 132, while Defendant Hodges conducted the count of the
14  cells in the second tier.  (*Id.* p. 82).  On the date Collier died by suicide, a document to be read by
15  correctional officers that sets forth their responsibilities while on duty – referred to as a "post
16  order" – provides at Paragraph 2 that the floor officers were primarily responsible for maintaining
17  order and security "for all areas of the housing unit."  (*Id.* pp. 35, 40).  Paragraph 2 also provides:
18  "You shall provide observation/coverage of all activities within your area of responsibility."  *Id.*

19  In a supplemental report drafted by Defendant Hodges at the request of J. Melvin two
20  days after Collier's death by suicide, Hodges reported that he observed Collier "in his cell on my
21  [Hodges'] first security check. He was standing at the back of the cell and I asked him, 'Hey
22  what's up Collier.' Inmate Collier responded back, 'Not much man.'" (Doc. 57-4 p. 50).

23  During his second inmate check at approximately 3:32 p.m., Hodges approached Collier's
24  cell and noticed that a bed sheet had been hung up, which partially blocked Hodges from fully
25  seeing Collier.  (Doc. 57-2 ¶ 6) (citing Doc. 57-5 "Welsh Decl." ¶ 2 & Ex. A).  Hodges attempted
26  to get Collier's attention by banging his hand on the cell door and shouting Collier's name, but
27  Collier would not respond.  (Doc. 57-1 p. 4).  Hodges then activated his personal alarm device
28  and Martinez responded to Hodges' alarm by going to Hodges' location at Collier's cell.  This

3

1  was the first time that Martinez was on the second tier of the building during his shift that day.
2  Other prison staff also responded to the alarm, and Collier was removed from his cell in an
3  unresponsive condition.  (*See* Doc. 59-2 p. 3 n.7).

4  According to the coroner's report, Collier was transported to a treatment and triage area at
5  around 3:40 p.m., and Collier was pronounced dead at 4:00 p.m.  (Doc. 59-4 p. 100).  Defendant
6  Hodges advised Deputy Coroner Mary Abidayo ("Abidayo") that Collier had previous suicide
7  attempts, including one attempt three years earlier during which Collier used a sharp object to cut
8  both sides of his neck, and prior incidents where Collier cut his own legs.  *Id*. at 101.  According
9  to Abidayo's report, Collier had a single cell designation due to in-cell violence.  *Id*.

10  Abidayo arrived at Collier's cell at around 6:35 p.m. and noted that there was blood at the
11  head of Collier's bed. A plastic bag with blood-soaked towels also was located at the head of the
12  bed.  *Id*.  There was also a broken nail clipper at Collier's desk which had blood present on it.  *Id*.
13  Abidayo found that Collier's death was due to exsanguination and ruled his death a suicide.  *Id*. at
14  103.

15  Collier previously attempted suicide with nail clippers, as an inmate of KVSP, less than
16  five months prior to his successful attempt.  Thereafter, according to a "Mental Health Form"
17  logged by a CDCR clinical psychologist on May 29, 2020, "[k]eeping sharp objects away will
18  assist to keep [Collier] safe."  (Doc. 59-3 p. 9, #5 (citing Doc. 59-6 "Kantorová Decl." ¶ 5); Doc.
19  59-4 p. 19 (AG010923)).  There were no medical or mental health care staff orders prohibiting
20  Collier from possessing sharp objects, including nail clippers, during the month before his death.
21  (Doc. 57-3 "Martinez Decl." ¶¶ 7, 13; Doc. 57-4 "Hancock Decl." ¶ 3).[4]

22  Officer Martinez was not aware that Collier was ever prohibited from possessing nail
23  clippers, nor that Collier ever possessed them.  (Martinez Decl. ¶ 8).  Martinez was not aware that
24  Collier previously attempted suicide, cut himself, or had cuts, marks, or other visible indications

---

[4] Although Plaintiff in her opposition brief (Doc. 59 p. 22) and in her response to Defendants' statement of undisputed facts (Doc. 59-2 p. 5, #16) challenges that no orders or policies prohibited Collier from possessing sharp objects, none of the citations to which Plaintiff refers in support of the dispute in fact establish that Collier was prohibited from possessing sharp objects or that permitting Collier access to nail clippers violated any identified CDCR policy.

4

that he previously cut himself. (*Id*. ¶¶ 9-11). Further, Martinez was only ever aware of a calf injury on Collier's leg, which to his knowledge was not the result of having attempted suicide or inflicted self-harm. (*Id*. ¶ 12). Neither Martinez nor Hodges was authorized to access an inmate's medical or mental health records, nor were they aware of Collier's mental health condition. (*Id*. ¶ 13).[5]

If an inmate housed in the EOP was required to be treated differently than other inmates generally were treated, for example through protective or precautionary measures, then this action was required solely at the direction of the KVSP medical or mental health staff. *Id*. There is no record evidence that Martinez or Hodges ever was directed to take any such measures concerning Collier. (Martinez Decl. ¶ 13; Hancock Decl. ¶ 3).

**APPLICABLE LAW**

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).

Each party's position must be supported by: (1) citing to particular portions of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. *See* Fed. R. Civ. P. 56(c)(1). The court may consider other materials in the record not cited to by the parties,

---

[5] Once again, while Plaintiff in her opposition brief (Doc. 59 p. 22) and in her response to Defendants' statement of undisputed facts (Doc. 59-2 p. 4, #10-13) challenges Martinez's attestations to lack of knowledge of Collier's conditions and history of suicide attempts, she advances only arguments that Martinez *should have* known about Collier's conditions, not that he, in fact, did know. Similarly, Plaintiff disputes that Defendants had access to Collier's mental health records by pointing out that they were obligated to share with medical staff relevant observations and to refer suicidal inmates for treatment – none of which refutes that neither Defendant could (or did) access Collier's mental health records. (*Id.* p. 5, #15).

5

but it is not required to do so. *See* Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) (on summary judgment, "the court has discretion in appropriate circumstances to consider other materials, [but] it need not do so"). Furthermore, "[a]t summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial." *Nevada Dep't of Corr. v. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011) (citations and internal quotations omitted). The focus is on the admissibility of the evidence's contents rather than its form. *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 846 (9th Cir. 2004).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett,* 477 U.S. at 317, 323 (1986)). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets this initial burden, the burden then shifts to the non-moving party "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387 (citing *Celotex Corp.*, 477 U.S. at 323). The non-moving party must "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson,* 477 U.S. at 252). However, the non-moving party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pac. Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).

The court must apply standards consistent with Rule 56 to determine whether the moving party has demonstrated the absence of any genuine issue of material fact and that judgment is appropriate as a matter of law. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence." *Manley v. Rowley,* 847 F.3d 705, 711 (9th Cir.

2017) (citation omitted).  The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

## DISCUSSION

### A. Plaintiff's Objections to Defendants' Evidence in Support of Motion for Summary Judgment.

In response to Defendants' motion for summary judgment, Plaintiff filed a document cataloging her "objections" to evidence on which Defendants rely. (Doc. 59-1).  The objections are presented in a table identifying the evidence to which Plaintiff objects, the basis for the objection, and prompts the Court to indicate a "ruling" per objection, either "sustained" or "overruled."  The objections largely challenge the foundation and purported hearsay nature of the referenced evidence.

With the exception of Plaintiff's objections pertaining to the "Staff Narrative" portion of a report about Collier's death by suicide attached and/or referred to in the defense declarations of J. Welsh, B. Hancock and J. Abuyen (Doc. 59-1 pp. 2-4), the Court declines Plaintiff's request to rule on the foundational and hearsay objections.  "At the summary judgment stage, we do not focus on the admissibility of the evidence's form.  We instead focus on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). *Accord*, *Nevada Dep't of Corr.*, 648 F.3d at 1019; *Carmen*, 237 F.3d at 1031. If the contents of a document are presented in a form that would be admissible at trial, the mere fact that the document itself might be excludable hearsay provides no basis for refusing to consider it on summary judgment.  *Fraser*, 342 F.3d at 1036-37.

### B. Eighth Amendment Deliberate Indifference (Claims One through Three)

#### 1. Legal Standard

"[T]he Eighth Amendment's prohibition against cruel and unusual punishment, made applicable to the States through the Fourteenth Amendment's Due Process Clause, requires the State to provide adequate medical care to incarcerated prisoners." *DeShaney v. Winnebago Cnty.*

7

*Dep't of Soc. Servs.*, 489 U.S. 189, 198-99 (1989).  To establish an Eighth Amendment claim on a condition of confinement, such as medical care, a Plaintiff must show: (1) an objectively, sufficiently serious, deprivation, and (2) the official was, subjectively, deliberately indifferent to the inmate's health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  These two requirements are known as the objective and subjective prongs of an Eighth Amendment deliberate indifference claim.  *Willhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012); *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002).

To satisfy the objective prong, there must be a "serious" medical need.  *Estelle v. Gamble*, 429 U.S. 87, 104 (1976).  A medical need is serious if failure to treat it will result in "significant injury or the wanton infliction of pain."  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)).  "[T]he conditions presenting the risk must be 'sure or very likely to cause ... needless suffering,' and give rise to 'sufficiently imminent dangers.'"  *Baze v. Rees*, 553 U.S. 35, 50 (2008) (Roberts, C.J., plurality opinion) (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)).

As to the subjective prong, there must be deliberate indifference.  Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'"  *Farmer*, 511 U.S. at 835 (1994) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)); *see Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004) ("Deliberate indifference is a high legal standard").  Deliberate indifference is shown when a prison official knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.  *Farmer*, 511 U.S. at 847; *see also Gibson v. Cnty. of Washoe, Nevada*, 290 F.3d 1175, 1187 (9th Cir. 2002).

The defendant must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference."  *Farmer*, 511 U.S. at 837.  "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk."  *Gibson*, 290 F.3d at 1188 (citation omitted).  This "subjective approach" focuses only "on what a defendant's

mental attitude actually was." *Farmer*, 511 U.S. at 839. *See Disability Rights Montana, Inc. v. Batista*, 930 F.3d 1090, 1101 (9th Cir. 2019) ("The second prong is met upon showing of deliberate indifference, which, as *Farmer* makes clear, is shown adequately when a prison official is aware of the facts from which an inference could be drawn about the outstanding risk, and the facts permit us to infer that the prison official in fact drew that inference, but then consciously avoided taking appropriate action."). Of course, whether a defendant possessed subjective knowledge is a factual question that is "subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842.

The Ninth Circuit holds that "[a] heightened suicide risk or an attempted suicide is a serious medical need." *Conn v. City of Reno*, 591 F.3d 1081, 1095 (9th Cir. 2010), *vacated*, 563 U.S. 915 (2011), *opinion reinstated in relevant part*, 658 F.3d 89 (9th Cir. 2011). Accord *Simmons v. Navajo Cnty., Arizona*, 609 F.3d 1011, 1018 (9th Cir. 2010) (citing *Conn*, 591 F.3d at 1095), *overruled on other grounds by Castro v. Cnty. of LA.*, 833 F.3d 1060 (9th Cir. 2016) (en banc). Where the alleged deliberate indifference involves an inmate's death by suicide, the Ninth Circuit has articulated the subjective test as follows: "To proceed to trial, [plaintiffs] must adduce evidence raising a triable issue that [defendant knew decedent] was *'in substantial danger' of killing himself* yet deliberately ignored such risk." *See id.* at 1019 (quoting *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1248 (9th Cir.2010)) (emphasis added). *See also id.* ("We cannot agree, however, that the evidence supports the inference that [defendant knew decedent] '*was at acute risk of harm*' at the time he killed himself") (quoting *Conn*, 591 F.3d at 1097) (emphasis added).

### 2. Analysis

Here, Defendant does not dispute that Collier had serious medical needs relating to mental health conditions while incarcerated. (Doc. 57-1 p. 6) ("Defendants do not dispute the objective component—that Adam Collier's risk of harming himself in his cell was sufficiently serious."). Thus, the issue presented by Defendants' motion for summary judgment is whether Defendants were subjectively aware that Collier faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it.

To establish that disputed issues of material fact exist sufficient to defeat summary judgment relating to Defendants' deliberate indifference, Plaintiff asserts that as floor officers at the EOP facility, Defendants should have known that Collier was at heightened risk of suicide. (Doc. 59 p. 17). Furthermore, Plaintiff argues that given his history of suicide, Collier should have been monitored more frequently and prioritized to a higher level of care. (*Id.* at 13). In light of his prior self-harm using nail clippers as an inmate at KVSP, less than five months prior to his death, Plaintiff also asserts Collier should never have been allowed to possess nail clippers. (*Id.* at 12). Plaintiff also points to Collier's mental health safety plan, which provided that "keeping sharp objects away helps keep him safe." *Id.* Plaintiff further argues that Collier should never has been housed in a cell by himself, based on his requests and recommendations. *Id*. (citing Kantorová Decl. ⁋ 5).

None of these arguments – individually or collectively – establish any triable issue of material fact as to whether Defendants *actually were* "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," or that they "also dr[e]w the inference." *Farmer*, 511 U.S. at 837. To be sure, the only facts and argument advanced by Plaintiff that Defendants knew of Collier's risk of suicide was that they were floor officers at the EOP facility and, thus, should have known Collier was at heightened risk of suicide.

It is undisputed both that inmates enrolled in the EOP receive a higher level of care from correctional officers and that correctional officers assigned to Facility C received training on suicide prevention, including how to identify telltale signs of suicidal ideation. (Doc. 59-4 p. 33). However, that alone is not enough to demonstrate *either* that Defendants knew Collier was "in substantial danger of killing himself" (*Simmons*, 609 F.3d at 1018-19) or that any such risk was "obvious." *Farmer*, 511 U.S. at 843 n.8.

The Ninth Circuit has dismissed on summary judgment similar deliberate indifference claims where the defendants had more notice of the decedent's risk factors than Defendants possessed here. For instance, in *Simmons*, the defendant was aware of the decedent-inmate's risk factors and was involved in decedent previously being placed on suicide watch. Notwithstanding this, the Court dismissed the deliberate indifference claims, finding that the passage of one month

after a failed suicide attempt, further counseling, and unremarkable behavior in the following month undermined a showing that defendant possessed subjective knowledge that the decedent was at acute and substantial risk of suicide. *Simmons*, 609 F.3d at 1018.

Here, Plaintiff adduces no evidence reflecting or tending to suggest that Defendants knew Collier was at substantial and acute risk of suicide. Indeed, Plaintiff has not refuted Defendant Martinez's sworn assertions that he: (1) was not aware that Collier previously attempted suicide, (2) was not aware that Collier ever was prohibited from possessing nail clippers, (3) was not aware that Collier ever possessed nail clippers, or (4) either had access to or ever reviewed Collier's medical or mental health records to discover anything concerning his mental health condition. (Martinez Decl. ¶¶ 8-12).

On this record, because Plaintiff presents no disputed issues of material fact as to whether Defendants either were aware that Collier presented any substantial and acute risk of suicide, or inferred Collier presented such a risk, or whether any such risk was obvious, the undersigned will recommend that Defendants' motion be granted as to Plaintiff's Eight Amendment claims.

### C. Fourteenth Amendment Due Process (Claim Four)

#### 1. Legal Standard

Parents and children may assert a Fourteenth Amendment substantive due process claim if they are deprived of the companionship of their child or parent through official conduct. *Lemire v. Cal. Dep't. of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013). However, only official conduct that "shocks the conscience" is cognizable as a substantive due process violation. *Id.* (quoting *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008)).

Deliberate indifference sufficient to sustain an Eighth Amendment claim generally shocks the conscience "so as long as the prison official had time to deliberate before acting or failing to act in a deliberately indifferent manner." *Id.* (citing *Tennison v. City and Cnty. of San Francisco*, 570 F.3d 1078, 1089 (9th Cir.2009) & *Porter*, 546 F.3d 1131 at 1138). In an Eighth Amendment prisoner-treatment case where a defendant-officer had ample time to correct his obviously wrongful conduct, the Ninth Circuit generally applies the deliberate indifference standard to determine whether alleged conduct "shocks the conscience." *See Peck v. Montoya*, 51 F.4th 877,

893 (9th Cir. 2022). A plaintiff also may satisfy the "shocks the conscience" standard by showing that a state official "acted with the purpose to harm." *Porter*, 546 F.3d at 1137.

### 2. Analysis

Here, the undersigned has found that Plaintiff cannot establish Defendants demonstrated deliberate indifference sufficient to proceed on claims under the Eighth Amendment. Further, Plaintiff has not alleged and does not argue in opposition to Defendants' motion for summary judgment that either Defendant acted with the purpose to harm Collier. (Doc. 59 pp. 24-25). Accordingly, because Plaintiff's substantive due process claim under the Fourteenth Amendment is inextricably tied to the same allegations that form the basis of her Eighth Amendment claims, the undersigned will recommend that Defendants' motion be granted as to Plaintiff's Fourteenth Amendment claim. *See, e.g., Toguchi*, 391 F.3d at 1060 ("for the same reasons that the Toguchis' deliberate indifference claim fails, their due process claim must also fail.").

### D. California Bane Act (Claim Five)

#### 1. Legal Standard

California's Bane Act, Cal. Civ. Code § 52.1, provides a right of action to plaintiffs for damages "against any person, whether acting under the color of law or not, who interferes with or attempts to interfere 'by threats, intimidation, or coercion with the exercise or enjoyment' of their civil rights under the laws of the United States or California.'" *Martinez v. Cnty. of Sonoma*, No. 15-cv-01953-JST, 2015 WL 5354071, at * 9 (N.D. Cal. Sept. 14, 2015) (quoting *M.H. v. Cnty. of Alameda*, 90 F. Supp.3d 889, 896 (N.D. Cal. 2013)).

To prevail on a Bane Act Claim, a plaintiff must allege and show that the defendant intentionally interfered with another's civil rights via threats, intimidation, or coercion. *Reese v. Cnty. of Sacramento*, 888 F.3d 1020, 1044 (9th Cir. 2018). "Nothing in the text of the statute requires that the offending 'threat, intimidation or coercion' be 'independent' from the constitutional violation alleged." *Cornell v. City & Cnty. of San Francisco*, 17 Cal. App.5th 766, 800 (2017). In addition, "a reckless disregard for a person's" constitutional rights is evidence of a specific intent to deprive that person's rights. *Reese*, 888 F.3d at 1045 (citation and quotation omitted).

12

"California's Bane Act requires proof of an underlying constitutional violation." *Williamson v. City of Nat'l City*, 23 F.4th 1146, 1155 (9th Cir. 2022) (reversing a district court's denial of summary judgment because there was no proof of underlying constitutional violation); *Barela v. Cnty. of Orange*, No. 8:21-cv-00799-JVS (DFMx), 2022 WL 17037430, at *9 (C.D. Cal. Aug 4, 2022) (granting motion for summary judgment on Bane Act claim after finding summary judgment appropriate for underlying First, Fourth, and Fourteenth Amendment claims*)*; *Mkrtchyan v. Sacramento Cnty.*, No. 2:17-cv-02366-DAD-KJN, 2023 WL 8698524, at *21 (E.D. Cal. Dec. 15, 2023) (same).

### 2. Analysis

As Defendants are entitled to summary judgment on all of Plaintiff's underlying constitutional claims, Plaintiff's Bane Act claim also fails. Accordingly, the undersigned will recommend that Defendants' motion be granted as to Plaintiff's Bane Act claim. *See Williamson*, 23 F.4th at 1155; *see also Barela*, 2022 WL 17037430, at *9 ("Where, like here, a plaintiff brings a Bane Act claim and a § 1983 claim based on the same alleged constitutional violations, the elements of the predicate constitutional violations are the same under both claims.").

### E. Wrongful Death and Survivor Action (Claim Six)

#### 1. Legal Standard

The elements of a California wrongful death claim are: (1) a wrongful act or neglect on the part of one or more persons that (2) causes (3) the death of person. *Estate of Prasad ex rel. Prasad v. Cnty. of Sutter*, 958 F. Supp.2d at 1101, 1118 (E.D. Cal. 2013); Cal. Civ. Proc. Code § 377.60. "Although it is a statutorily-created action, a wrongful death suit predicated on negligence must still contain the elements of actionable negligence." *Deloney v. Cnty. of Fresno*, No. 1:17-cv-01336-LJO-EPG, 2019 WL 1875588, at *9 (E.D. Cal. Apr. 26, 2019). "A negligence claim requires proof that (1) defendant had a duty to use care, (2) defendant breached that duty, and (3) the breach of duty was the proximate or legal cause of the resulting injury." *Id.* (citing *Hayes v. Cnty. of San Diego*, 57 Cal.4th 622, 629 (2013)). *See Wright v. Yanos*, No. 2:15-cv-02671-TLN-CKD, 2017 WL 6040335, at *6 (E.D. Cal. Dec. 6, 2017) ("[T]he plaintiffs can prevail on a wrongful death claim by merely establishing negligence, which has been defined as

1  the want of such care as a person of ordinary prudence would exercise under the circumstances of
2  the case, [and] may consist in heedlessly doing an improper thing or heedlessly refraining from
3  doing a proper thing.") (quotation and citation omitted).

4    "A negligent act 'is not the proximate cause of [a plaintiff's] alleged injuries if another
5  cause intervenes and supersedes [defendant's] liability for the subsequent events.'" *Campos v.*
6  *Cnty. of Kern*, No. 1:14-cv-01099-DAD-JLT, 2017 WL 915294, at *14 (E.D. Cal. Mar. 7, 2017)
7  (quoting *Conn*, 591 F.3d at 1101). "A cause is intervening and superseding if it is
8  unforeseeable." *Id*. (citation omitted). "As a general rule, acts of suicide have been found to be
9  unforeseeable events that preclude a finding of causation." *Id.* However, courts have recognized
10 an exception to this general rule in cases where a government official's actions or inaction were
11 "the moving force" behind a sequence of events that ultimately lead to a foreseeable harm being
12 suffered, including suicide. *Id.* (citing cases).

13   In *Campos*, an inmate who harmed himself while in-custody was moved to a suicide-
14 watch cell that was not monitored by a camera. *Id*. at *1. The defendant correctional officers
15 discovered the inmate in his cell with a cord noose fastened around his neck and tied to the cell
16 bars. The noose was fashioned from a section of the electrical cord of a fan located in the
17 hallway outside of decedent's cell. *Id*. The court denied defendants' motion for summary
18 judgment on a wrongful death claim because the defendants were aware that an electric fan was
19 placed outside the suicide watch cell in question, providing circumstantial evidence of
20 negligence. The court reasoned that "the defendants' leaving of an electric fan with a duct-taped
21 cord near a suicide cell, at least arguably within reach of a suicidal detainee, could be considered
22 by a rational trier of fact to be the 'moving force' behind decedent's ultimate suicide." *Id.* at *15.

23   In contrast, the court in *Weishaar v. Cnty. of Napa* granted summary judgment to the
24 defendant correctional officer on a successor in interest's wrongful death cause of action for the
25 in-custody death by suicide of her husband. No. 14-cv-01352-LB, 2016 WL 7242122 (N.D. Cal.
26 Dec. 15, 2016). The inmate's suicide happened on the defendant's watch approximately 25
27 minutes after his last security check. *Id*. at *8. Although the defendant had no knowledge of
28 reports regarding the decedent's suicide risk, he characterized the decedent as appearing "really

14

down" in the hours leading up to the suicide, received reports from the decedent that he was bipolar, in need of medication and about to "lose it," and cried. *Id*. at *4, *8. Based on this record, and because the facility's medical and housing staff were responsible for assessing and addressing the decedent's needs (not the correctional officer), the court found there were no triable issues of fact as to the defendant's responsibility for the death by suicide and granted summary judgment.

### 2. Analysis

Neither party reasonably challenges that Defendants (as correctional officers) owed Collier (an inmate where Defendants served) a duty of care. *See Cotta v. Cnty. of Kings*, 686 Fed. Appx. 467, 469 (9th Cir. 2017) ("In California, prison officials owe detainees a duty to protect them from foreseeable harm.") (citing *Giraldo v. Cal. Dep't of Corr. & Rehab.*, 168 Cal. App.4th 231 (2008)). Thus, the undersigned considers whether any conceivable breach of duty by Defendants caused Collier's death.

#### (i) Possession of Nail Clippers

The undersigned found above in connection with her constitutional claims that Plaintiff has presented no triable issue of material fact that Defendants had any knowledge Collier presented a heightened risk of suicide. In light of this, it cannot be said that Defendants' alleged failure to prevent Collier from possessing nail clippers was the "moving force" behind Collier's eventual death by suicide. *See Campos*, 2017 WL 915294, at *14. Whereas in *Campos*, the defendant correctional officers were aware the decedent was suicidal but nevertheless placed him in a cell where he could access material to construct a noose to facilitate the suicide, here, there was no foreseeable reason for Defendants to prevent Collier from accessing nail clippers. Indeed, Plaintiffs have not persuasively refuted Defendants' showing there were no medical or mental health care staff orders prohibiting Collier from possessing sharp objects, including nail clippers, during the month before his death, and that such nail clippers could be purchased by inmates at the canteen. (*See* Martinez Decl. ¶ 13; Hancock Decl. ¶ 3).

#### (ii) Security Checks

The parties forcefully dispute whether Defendant Hodges checked on and communicated with Collier at 2:00 p.m. during Hodges' first security check of the day, as he claimed in a

1  supplemental report but which was not mentioned in his original incident report. (Doc. 57-4 p.
2  50).[6] In particular, Plaintiff relies on the expert report and a supplemental declaration filed in
3  opposition to Defendants' motion for summary judgment by Dr. James Lee. In the supplemental
4  declaration (Doc. 59-7), Dr. Lee opines that because it would have taken Collier more than four
5  hours to die by exsanguination and given that Collier's time of death at 3:32 p.m., it is not
6  possible Hodges saw and spoke with Collier at 2:00 p.m. as Collier would not have been able to
7  stand at that time. Dr. Lee further opines that Collier would not have had enough dexterity to
8  affix the bedsheet found in his cell at the time of his death *after* his conversation with Hodges due
9  to lack of dexterity from exsanguination.

10  Defendants implore the Court to disregard Dr. Lee's supplemental declaration because it
11  presents opinions not included in his disclosed Rule 26(a)(2)(B) expert report.[7] (Doc. 60 p. 4).
12  Plaintiff counters that the opinions, in fact, "fall within the scope of his expert report and his
13  skills, experience, and educational background." (Doc. 68 p. 2). Plaintiff further asserts that
14  Defendants were aware of Dr. Lee's views regarding these challenged opinions because he
15  offered deposition testimony during expert discovery related to those opinions. (*Id.* pp. 2-3).
16  Finally, Plaintiff argues exclusion is not warranted for any discovery violation under Rule 37
17  because any late disclosure either was harmless or substantially justified. (*Id.* p. 3).

18  Rule 26(a)(2) requires disclosure of an expert report for each expert that may offer
19  testimony at trial that includes, among other things, "a complete statement of all opinions the
20  witness will express and the basis and reasons for them" as well as the facts considering in

---

[6] The Court rejects Plaintiff's argument that Defendant Hodges' supplemental report is inadmissible and should not be considered by the Court on summary judgment; the report satisfies the public records and business records exceptions to hearsay. Fed. R. Evid 803(6) and (8); *Greer v. Cnty. of San Diego*, No. 19cv378-JO-DEB, 2023 WL 2316203, at *7 (S.D. Cal. Mar. 1, 2023) (finding investigative records following an inmate suicide satisfied the public record exception); *Anglin v. Pratti*, 643 F. Supp.3d 1077, 1085-86 (E.D. Cal. 2022) (finding written statements by floor officers pertaining to inmate complaint admissible under the public records exception).

[7] In response to Defendants' challenge that the supplemental expert declaration should be disregarded, at the Court's direction, Plaintiff filed supplemental briefing arguing that the supplemental declaration was within the scope of his timely disclosed expert report. *See* Docs. 68, 69.

forming those opinions. Fed. R. Civ. P. 26(a)(2)(B).

Additionally, "Rule 26(e) creates a 'duty to supplement,' not a right. Nor does Rule 26(e) create a loophole through which a party who submits partial expert disclosures, or who wishes to revise her disclosures in light of her opponent's challenges to the analysis and conclusions therein, can add them to her advantage after the court's deadline for doing so has passed." *Luke v. Family Care and Urgent Medical Clinics,* 323 Fed. Appx. 496, 500 (9th Cir. 2009) (affirming exclusion of supplemental expert report submitted in opposition to motion for summary judgment) (unpublished). A supplemental expert report that merely seeks to "strengthen" or "deepen" opinions expressed in the original expert report does not fall within the permissible scope of supplemental expert disclosures under Rule 26(e). *City of Seattle v. Monsanto Company*, No. C16-107-RAJ-MLP, 2023 WL 7046271, at *8-9 (W.D. Wash. Oct. 26, 2023) (excluding untimely supplemental expert report); *Bell v. Boeing Co.*, No. 20-cv-01716-LK, 2022 WL 1206728, at *3-5 (W.D. Wash. Apr. 22, 2022) (same); *Jarrow Formulas, Inc. v. Now Health Group*, No. CV 10-8301 PSG (JCx), 2012 WL 3186576, at *15 (C.D. Cal. Aug. 2, 2012) (same).

The undersigned has compared the challenged opinions in Dr. Lee's supplemental declaration with the opinions disclosed in his expert report and finds it likely that Plaintiff's supplemental expert declaration should be excluded given Plaintiff's failure to disclose it consistent with Rule 26(a)(2)(B) prior to the close of expert discovery. The failure to include in Dr. Lee's timely disclosed Rule 26(a) expert report the opinions newly disclosed in opposition to Defendants' motion for summary judgment does not appear either justified or harmless given that the scheduled trial date is rapidly approaching and, with expert discovery closed, Defendants have no opportunity to depose Dr. Lee. *See* Fed. R. Civ. P. 37(c)(1).

Nevertheless, whether Plaintiff's supplemental declaration of Dr. Lee is admissible is an issue that need not be dispositively resolved for the purposes of Defendants' motion for summary judgment. Instead, the undersigned finds *even if* Defendant Hodges first encountered Collier approximately 90 minutes after his shift began (*e.g.*, at 3:32 p.m.), Plaintiff still has failed to identify any triable issues of material fact as to whether Defendants' actions were the proximate or legal cause of Collier's death – as Plaintiff must to proceed with a wrongful death claim. In

particular, no conduct alleged by Defendants, including any delay during the first 90 minutes of their shift to conduct a security check of Collier, was "the moving force" behind Collier's death by suicide. *Cf. Campos*, 2017 WL 915294, at *14 (disputed issue of fact as to a correctional officer's placement of a suicidal inmate where he could access material to fashion a noose) *with Weishaar*, 2016 WL 7242122, at *4, *8 (granting summary judgment to correctional officer where the facility's medical and housing staff were responsible for assessing and addressing the decedent's suicide needs). *Accord Germaine-McIver v. Cnty. of Orange*, No. SACV 16-01201-CJC (GJSx), 2018 WL 6258896, at *17 (C. D. Cal. Oct. 31, 2018) (granting summary judgment on wrongful death claim where defendants had no advance knowledge of the inmate's suicidal intentions).[8]

Accordingly, the undersigned will recommend that Defendants' motion be granted as to Plaintiff's wrongful death and survival claim.

## FINDINGS AND RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED:

1. Defendants' motion for summary judgment (Doc. 57) be **GRANTED**.

2. The Clerk of Court be **DIRECTED** to close this case.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within fourteen (14) days** from the date of service of these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." A failure to file objections within the specified time may result in waiver of that party's rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839

---

[8] The undersigned separately notes that Defendants may be entitled to immunity from liability for wrongful death under Cal. Gov. Code § 845.6. *See, e.g.*, *Germaine-McIver*, 2018 WL 6258896, at *16-17; *Frary v. County of Marin*, 81 F. Supp.3d 811, 842 (N.D. Cal. 2015). However, Defendants did not move for summary judgment on this ground, have not addressed immunity under Cal. Gov. Code § 845.6, and it is not the Court's province to manufacture arguments on behalf of the parties. *E.g.*, *Chandler v. Cal. Dep't of Corr. & Rehab*, No. 1:21-cv-01657-JLT-HBK, 2022 WL 2818646, at *1 (E.D. Cal. July 19, 2022); *California v. Johnson*, No. 2:18-cv-01056-KJM-CKD, 2018 WL 4214650, at *4 (E.D. Cal. Sept. 5, 2018).

(9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 16, 2024**                                     _____

UNITED STATES MAGISTRATE JUDGE