**WANGER JONES HELSLEY PC**
265 East River Park Circle, Suite 310
Fresno, California 93720
Telephone:  (559) 233-4800
Facsimile:  (559) 233-9330

Jay A. Christofferson #203878
  E-mail: jchristofferson@wjhattorneys.com
Steven K. Vote #309152
  E-mail: svote@wjhattorneys.com
Nathan J. Martin #339673
  E-mail: nmartin@wjhattorneys.com

Attorneys for: Plaintiff SUSAN OTTELE, on her own behalf and
  on behalf of the Estate of Adam J. Collier, decedent

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN OTTELE and WILLIAM COLLIER, JR., on their own behalf and on the behalf of the Estate of Adam J. Collier, decedent,<br><br>Plaintiffs,<br><br>v.<br><br>OSCAR MARTINEZ and AARON HODGES, and DOES 1–10, inclusive,<br><br>Defendants. | Case No. 1:22-cv-00187-JLT-CDB<br><br>**PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATIONS**<br><br>(Doc. 72) |

Plaintiff SUSAN OTTELE, on her own behalf and on behalf of the Estate of Adam J. Collier, decedent ("Plaintiff"), hereby submits this Objection to the Magistrate Judge's Findings and Recommendation (Doc. 72)[1] ("Findings") to grant Defendants' Motion for Summary Judgment (Doc. 57) ("Motion"):

## I. INTRODUCTION

The Findings' conclusion that Defendants' Motion for Summary Judgment should be granted is incorrect on both legal and factual grounds.  First, the Findings' conclusion that Plaintiff's expert Declaration of James Lee, M.D. should not be considered, or that it does not create an issue of fact, is faulty from both a legal and factual perspective.  Dr. Lee provided a Declaration in support of Plaintiff's Opposition (Doc. 59) to Defendant's Motion, fully consistent with the opinions that he expressed in his expert Report that was provided consistent with FRCP 26.[2]  Defendants were fully cognizant of these opinions as they deposed Dr. Lee relating to the very physiological effects on the human body caused by excessive blood loss raised in the Declaration.  Dr. Lee was definitive that based on Mr. Collier's type of wound, the amount of time it would have taken for Mr. Collier to exsanguinate and the time Mr. Collier's body was found, that there is no physiological way he could have been standing and have a conversation with Officer Hodges at 2:00 p.m. on the date of his suicide.  Those opinions are consistent with Dr. Lee's expertise, education, and experience.  Dr. Lee's opinions are unrebutted by the Defendants, who offer no medical evidence, the Findings' unwillingness to consider those opinions or, at least identify that the opinions create an issue of fact as to whether Defendants conducted a timely and appropriate inspection of Mr. Collier make the Findings unreliable.

Additionally, the Findings are replete with facts that are in the record identifying factual disputes relating to the knowledge of Hodges and Martinez as to (1) Mr. Collier's prior suicide attempts and self-harm and (2) recommendation by the prison's clinical psychologist that prison staff should keep sharp objects away from Mr. Collier based on his repeated efforts to try and commit

---

[1] Docket filings cited herein are referred to by the CM/ECF-assigned pagination.

[2] Plaintiff's Response (Doc. 68) to Defendants' evidentiary objections in their Reply (Doc. 60) outlines how the opinions in Dr. Lee's are fully consistent with the opinions that he expressed in his expert Report.  The Magistrate Judge failed to acknowledge the Response's arguments.

suicide, including with nail clippers that he ultimately used to kill himself. The Findings state that Mr. Collier did not report for the noon roll call. In so doing, Martinez and Hodges failed to engage the necessary emergency procedures to find and conclude that Mr. Collier was alive and well. At a minimum, this creates a disputed factual issue as to whether the Defendants timely investigated Mr. Collier's well-being or that any effort was made to check on Collier before finding him dead. Lastly, the Findings rely on inadmissible evidence in the form of hearsay and double hearsay statements to support its conclusions. However, even if there was an exception to the hearsay rule allowing the Court to consider the hearsay and double hearsay evidence, in doing so, it necessarily creates an issue of fact whether the Defendants performed an inspection of Mr. Collier in his cell in a timely fashion or at all based on the manner of Mr. Collier's death and when his body was found.

## II. ARGUMENT

### A. The Magistrate Judge Improperly Found Plaintiff's Expert Declaration of James Lee, M.D., Should Not Be Considered as Part of Plaintiff's Opposition to Defendants' Motion for Summary Judgment

The Findings concluded that Plaintiff's expert, James Lee, M.D.'s Declaration in support of Plaintiff's Opposition to Defendants' Motion should not be considered because Plaintiff purportedly failed to disclose the opinions stated therein and that Defendants have no opportunity to depose Dr. Lee.

The Findings state, "Rule 26(e) creates a 'duty to supplement,' not a right. Nor does Rule 26(e) create a loophole through which a party who submits partial expert disclosures, or who wishes to revise her disclosures in light of her opponent's challenges to the analysis and conclusions therein, can add them to her advantage after the court's deadline for doing so has passed." (Doc. 72, at 17, lns. 2–8 (quoting *Luke v. Family Care and Urgent Medical Clinics*, 323 Fed. Appx. 496, 500 (9th Cir. 2009) (unpublished)).) The Findings continue, "[a] supplemental expert report that merely seeks to 'strengthen' or 'deepen' opinions expressed in the original expert report does not fall within the permissible scope of supplemental expert disclosures under Rule 26(e)." (Doc. 72, at 17, lns. 8–14 (quoting to *City of Seattle v. Monsanto Company*, No. C16-107-RAJ-MLP, 2023 WL 7046271, at *8-9 (W.D. Wash. Oct. 26, 2023); *Bell v. Boeing Co.*, No. 20-cv-01716-LK, 2022 WL 1206728, at *3-5 (W.D. Wash. Apr. 22, 2022); *Jarrow Formulas, Inc. v. Now Health Group*, No. CV 10-8301 PSG

1  (JCx), 2012 WL 3186576, at *15 (C.D. Cal. Aug. 2, 2012)).)

2  The Findings rely on an unpublished Ninth Circuit decision, along with decisions outside the Eastern District, to refute Plaintiff's Response to Defendants' Evidentiary Objections (Doc. 68). Plaintiff, in contrast, cited to a published Ninth Circuit decision, *Merch. v. Corizon Health*, Inc., 993 F.3d 733, 739 (9th Cir. 2021), along with applicable Eastern District decisions, the Federal Rules of Evidence—Rule 703, and Federal Code of Civil Procedure—Rule 26(a)(2)(B)(i), (ii) in support of the Opposition. The Findings do not attempt to distinguish or even address Plaintiff's authority. This is improper.

### 1. Content Versus Form of Dr. Lee's Declaration

The Findings state that, "'[a]t summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial.' *Nevada Dep't of Corr. v. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011) (citations and internal quotations omitted). The focus is on the admissibility of the evidence's contents rather than its form. *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 846 (9th Cir. 2004)." (Doc. 72, at 6, lns. 4–8.) "If the contents of a document are presented in a form that would be admissible at trial, the mere fact that the document itself might be excludable hearsay provides no basis for refusing to consider it on summary judgment. *Fraser* [*v. Goodale*, 342 F.3d 1032,] 1036-37." (Doc. 72, at 7, lns. 17–23 (alteration added) (also citing to *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).)

The Findings conclude that Dr. Lee's expert Declaration should be excluded because his expert Report failed to include the opinions stated in the Declaration and thus violates Rule 26(a)(2)(B). Notwithstanding that Dr. Lee's expert Report is unrebutted by Defendants, who have not retained a medical expert, and his Declaration addresses specific disputed facts Defendants rely on in their Motion that are within his expertise, experience and educational background, <u>the Magistrate Judge should have considered the content of the Declaration throughout the entirety of the Findings</u>, *rather than concluding that the form of the Declaration was inadmissible.* The contents of Dr. Lee's Declaration (e.g., his opinions based on his skills, experience, and educational background) is admissible at trial. *See Fraser*, 342 F.3d at 1036-37. At trial, Plaintiff could rely on opinions made by Dr. Lee outside of those in his expert Report to the extent there was testimony elicited that warranted a

discussion of those opinions.

Plaintiff provided a thorough Response (Doc. 68) to Defendants' evidentiary objections in their Reply (Doc. 60), which showed that Dr. Lee's Declaration fell squarely within the scope of his unrebutted expert Report.[3] The Magistrate Judge, however, provided a conclusory statement that he "has compared the challenged opinions in Dr. Lee's supplemental declaration with the opinions disclosed in his expert Report and finds it ***likely*** that Plaintiff's supplemental expert declaration should be excluded given Plaintiff's failure to disclose it consistent with Rule 26(a)(2)(B) prior to the close of expert discovery." (Doc. 72, at 17, lns. 15–18 (emphasis added).) The Magistrate Judge provides no analysis as to why the opinions in Dr. Lee's Declaration do not fall within the areas addressed in his expert Report, despite the detailed Response citing to Dr. Lee's unrebutted expert Report and Dr. Lee's deposition testimony. (*See* Doc. 68.) Moreover, the Magistrate Judge's statement that he found it "likely" that Dr. Lee's Declaration should be excluded is inappropriate for purposes of summary judgment in which any question as to whether a motion should be granted is found against the moving party. Unless the expert Declaration should be excluded because Plaintiff failed to disclose any Expert Disclosure/reports, or the opinions in the Declaration truly fall outside the Report or the expert's expertise, education, and experience, it must be considered for purposes of the motion for summary judgment.

The Magistrate Judge further found that Dr. Lee's Declaration "***does not appear*** either justified or harmless given that the scheduled trial date is rapidly approaching and, with expert discovery closed, *Defendants have no opportunity to depose Dr. Lee*." (Doc. 72, at 14, lns. 20–22 (emphasis added).) This statement is wrong and misleading. While expert discovery is closed, <u>Defendants deposed Dr. Lee</u>. In fact, not only did Defendants depose Dr. Lee, they questioned Dr. Lee regarding how the human body would react to blood loss given a number of different factors (physical exertion, size and type of the wound), and in particular, how Mr. Collier would have reacted to blood loss. (*See* Doc. 68, at 4:3–6:23.) The Findings do not recognize that Dr. Lee was deposed or the testimony

---

[3] Plaintiff also provided her Expert Disclosures and reports timely, consistent with FRCP 26, and cited Dr. Lee's expert Report in support of the Opposition. Dr. Lee's timely Report concludes that it would have taken Mr. Collier 4.16 hours before he died of exsanguination and he would have lost approximately 10 milliliters of blood per minute. (Doc. 59-7, Exh. A.)

elicited. Finally, the Magistrate Judge's statement that Dr. Lee's Declaration "does not appear" either justified or harmless is ineffectual because, again, any question as to whether a motion should be granted is found against the moving party.

## 2. **Plaintiff's Expert Declaration Necessarily Creates an Issue of Fact**

The Magistrate Judge concluded, "whether Plaintiff's supplemental declaration of Dr. Lee is admissible is an issue that need not be dispositively resolved for purposes of Defendants' motion for summary judgment. Instead, . . . *even if* Defendant Hodges first encountered Collier approximately 90 minutes after his shift began (e.g., at 3:32 p.m.), Plaintiff has failed to identify any triable issues of material fact as to whether Defendants' actions were the proximate or legal cause of Collier's death." (Doc. 72, at 17, lns. 23–28.) This statement is contradictory to and belied by the opinions set forth in Dr. Lee's Declaration. Assuming the content, rather than the form of Dr. Lee's Declaration is admissible, it creates an issue of fact establishing that it would be <u>physiologically impossible</u> for Mr. Collier to be standing at 2:00 p.m. based on the amount of blood loss, the manner and method of that blood loss and when time of Mr. Collier's body was found, such that Defendant Hodges could not have had the conversation with Mr. Collier. This creates an issue of fact as to whether an actual investigation was timely and properly conducted pertaining to decedent by Defendant Hodges.

The Magistrate Judge's findings that Plaintiff's expert Declaration in support of her Opposition to Defendants' Motion should be excluded because it is improper and infects the entirety of the Findings.

### B. The Magistrate Judge's Findings and Recommendations Contradict the Background Facts on Which It Relies, Including Inadmissible Hearsay and Double Hearsay

The Magistrate Judge stated the following factual background in support of the Findings:

> Collier has a long-documented history of suicide attempts via various methods. According to CDCR records, those methods include attempted overdose by ingesting pills in 2006 (listed as 'severe [*sic*]'), stabbing himself in the neck in February 2017 ('moderate'), cutting his neck with a paperclip in July 2019 ('minor-superficial') as well as an unspecified attempt to cut himself in August 2019 ('moderate'). Notably, on May 23, 2020, Collier committed self-harm ('minor-superficial') by using his toenail clippers to excoriate the top layer of his neck as well as the

skin on his bicep. (Doc. 72, at 2, lns. 13–19 (citing to Doc. 59-4, at 12).)

After Collier's suicide attempt in May 2020, he was transferred to Facility C, Building eight, cell 221. Cell 221 was located on the upper tier of the building. Facility C is a special housing unit for inmates enrolled in the Enhanced Outpatient Program ('EOP'). Inmates enrolled in the EOP receive a higher level of care from correctional officers. In turn, correctional officers assigned to Facility C receive training on suicide prevention, including how to identify telltale signs of suicidal ideation. (Doc. 72, at 2:23–3:5 (citing to Doc. 57-2 ¶1; Doc. 59-4, at 33, 84).)

On October 17, 2020, Collier was given breakfast in his cell during the morning hours. Collier did not report for the inmate count at noon. Defendants Hodges and Martinez worked as floor officers in KVSP in the same facility where Collier was housed. Defendants' shift on October 17, 2020, lasted from 2:00 p.m. to 10:00 p.m. Defendants were responsible for conducting periodic checks on the inmates housed there. These checks included confirming whether the inmates were alive by visually observing them and counting 'breathing flesh.' (Doc. 72, at 3, lns. 6–12 (alterations added) (citing to Doc. 59-2, at 2; Doc. 59-4, at 40, 41, 100).)

In a supplemental report drafted by Defendant Hodges at the request of J. Melvin two days after Collier death by suicide, Hodges reported that he observed Collier 'in his cell on my [Hodges'] first security check. He was standing at the back of the cell and I asked him, "Hey what's up Collier." Inmate Collier responded back, "Not much man." During his second inmate check at approximately 3:32 p.m., Hodges approached Collier's cell and noticed that a bed sheet had been hung up, which partially blocked Hodges from fully seeing Collier. (Doc. 72, at 3, lns. 19–25 (citing to Doc. 57-4, at 50; Doc. 57-2 ¶ 6; Doc. 57-5 ¶ 2, Ex. A).)

Defendant Hodges advised Deputy Coroner Mary Abidayo ('Abidayo') that Collier had previous suicide attempts, including one attempt three years earlier during which Collier used a sharp object to cut both sides of his neck, and prior incidents where Collier cut his own legs. According to Abidayo's report, Collier had a single cell designation due to in-cell violence. (Doc. 72, at 4, lns. 5–9 (citing to Doc. 59-4, at 100, 101).)

Finally, the Magistrate Judge asserts that Mr. Collier "previously attempted suicide with nail clippers, as an inmate of KVSP, less than five months prior to his successful attempt. Thereafter, according to a 'Mental Health Form' logged by a CDCR clinical psychologist on May 29, 2020,

'[k]eeping sharp objects away will assist to keep [Collier] safe.' There were no medical or mental health care staff orders prohibiting Collier from possessing sharp objects, including nail clippers, during the month before his death." (Doc. 72, at 4, lns. 15–21 (alterations in original) (citing to Doc. 59-3, at 9; Doc. 59-6 ⁋ 5); Doc. 59-4, at 19 (AG010923)).)

Much of the factual background asserted by the Magistrate Judge in support of the Findings that Defendants' Motion should be granted is disputed by Plaintiff's evidence included in her Response to Defendants' Statement of Undisputed Facts (Doc. 59-2). Moreover, it appears that the Magistrate Judge wholly disregards the majority of the pertinent facts he himself includes in the Findings.

> 1. **The Magistrate Judge's Analysis For All the Claims Is Flawed Because He Ignores Facts Which Necessarily Create an Issue of Material Fact That Support the Denial of Defendants' Motion for Summary Judgment**

The Findings rely on the following legal premise: "[s]ummary judgment is appropriate where there is 'no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' Fed. R. Civ. P. 56(a). The court must apply standards consistent with Rule 56 to determine whether the moving party has demonstrated the absence of any genuine issue of material fact and that judgment is appropriate as a matter of law. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). '[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence.' *Manley v. Rowley,* 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted). The evidence must be viewed 'in the light most favorable to the nonmoving party' and 'all justifiable inferences' must be drawn in favor of the nonmoving party. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000)." (Doc. 72, at 6:24–7:4.)

The Findings fail to follow the legal requirement that the evidence must be viewed "'in the light most favorable to the nonmoving party' and 'all justifiable inferences' must be drawn in favor of the nonmoving party." (Doc. 72, at 7, lns. 1–4 (citing *Orr*, 285 F.3d at 772.) For example, the Magistrate Judge held that Facility C, Building eight is a special housing unit for inmates enrolled in the EOP, whereby those inmates should receive a higher level of care from correctional officers,

whom in turn are specifically trained on suicide prevention, including how to identify telltale signs of suicidal ideation. (*See* Doc. 72, at 2–3.)

Despite that, the Magistrate Judge finds none of those facts establishes any triable issue of material fact as to whether Defendants "*actually were* 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' or that they 'also dr[e]w the inference.'" (Doc. 72, at 10, lns. 13–15 (citing *Farmer*, 511 U.S. at 837).) The Magistrate Judge continues, "To be sure, the only facts and argument advanced by Plaintiff that Defendants knew of Collier's risk of suicide was that they were floor officers at the EOP facility and, thus, should have known Collier was at heightened risk of suicide." (Doc. 72, at 10, lns. 15–17.) However, the facts stated included in the Findings contradict that conclusion. The Findings state: "Defendant Hodges advised Deputy Coroner Mary Abidayo ('Abidayo') that Collier had previous suicide attempts, including one attempt three years earlier during which Collier used a sharp object to cut both sides of his neck, and prior incidents where Collier cut his own legs." (Doc. 72, at 4, lns. 5–8 (citing to Doc. 59-4, at 100, 101).) Thus, a genuine dispute exists as to the knowledge of Defendants about Mr. Collie. The Findings ignore this.

Further, the Findings state: "On October 17, 2020, Collier was given breakfast in his cell during the morning hours. Collier did not report for the inmate count at noon." (Doc. 72, at 3, lns. 6–7 (citing to Doc. 59-2, at 2; Doc. 59-4, at 40, 100).) The Magistrate Judge further relied on a fact he asserted, specifically that Defendant Hodges "reported that he observed Collier 'in his cell on my [Hodges'] first security check. He was standing at the back of the cell . . . .'" (Doc. 72, at 3, lns. 20–21 (alteration in original).) Plaintiff disputed this fact. (*See* Doc. 59-2, at 2, #5.) Specifically, because of the failure to report by Mr. Collier to the noon count, Defendants Martinez and Hodges failed to follow the necessary emergency procedures to check on Mr. Collier immediately upon clocking in. None of the emergency procedures that would need to be utilized were followed based on the failure of Mr. Collier to report for the inmate count at noon. Plaintiff cited to Defendant Martinez's own deposition testimony to support this disputed fact. (*See* Doc. 59-4 ¶ 6, Exh. D, at 97:6–99:5.)

The Magistrate Judge concludes, "Here, Plaintiff adduces <u>no</u> evidence reflecting or tending to suggest that Defendants knew Collier was at substantial and acute risk of suicide. Indeed, Plaintiff has

not refuted Defendant Martinez's sworn assertions that he: (1) was not aware that Collier previously attempted suicide, (2) was not aware that Collier ever was prohibited from possessing nail clippers, (3) was not aware that Collier ever possessed nail clippers, or (4) either had access to or ever reviewed Collier's medical or mental health records to discover anything concerning his mental health condition." (Doc. 72, at 11, lns. 4–10.) Conveniently, the Magistrate Judge misconstrues the "Mental Health Form" logged by a CDCR clinical psychologist on May 29, 2020, which specifically stated that "[k]eeping sharp objects away will assist to keep [Collier] safe." (Doc. 72, at 4, lns. 16–18.) The Findings state that it was there is no evidence that Defendants Martinez or Hodges had access to Mr. Collier's medical or mental health records to discover anything concerning his mental health, and that Mr. Collier's EOP housing placement and Defendants suicide training alone "is not enough to demonstrate *either* that Defendants knew Collier was 'in substantial danger of killing himself' [citation] or that any such risk was 'obvious.' [Citation.]" (Doc. 72, at 10, lns. 21–22 (citing to S*immons v. Navajo Cnty., Arizona*, 609 F.3d 1011, 1018 (9th Cir. 2010); *Farmer*, 511 U.S. at 843 n.8).)

However, the Mental Health Form showing that Collier had a history of suicide attempts, had engaged in self-harm, and was in EOP housing, provides a favorable inference to Plaintiff that Defendants knew Mr. Collier was in substantial danger of killing himself, or that the risk was obvious, given they worked in the EOP facility and were trained on suicide prevention and how to identify signs of suicidal ideation.[4] These facts are directly in contradiction to the Findings' conclusion that "there is no record evidence that Martinez or Hodges was ever directed to take any such measures [precautionary measures such as removing sharp objects] concerning Collier." (Doc. 72, at 5, lns. 6-10.)

So, given that (1) inmates in the EOP program should receive a higher level of care from correctional officers, (2) correctional officers specifically trained on suicide prevention, including how to identify telltale signs of suicidal ideations, (3) a Mental Health Form that stated Mr. Collier should be kept away from sharp objects, and (4) Defendant Hodges knew about Mr. Collier's prior suicidal

---

[4] Further favorable inference must be provided to Plaintiff because "Defendant Hodges advised Deputy Coroner Mary Abidayo ('Abidayo') that Collier had previous suicide attempts, including one attempt three years earlier during which Collier used a sharp object to cut both sides of his neck, and prior incidents where Collier cut his own legs." (Doc. 72, at 4, lns. 5–8 (citing to Doc. 59-4, at 100, 101).)

history, including with nail clippers, the very implement used to commit suicide, it appears that the Magistrate Judge is mistaken and inadvertently engaged in determining the credibility of the evidence presented, rather than simply giving the evidence all justifiable inferences, viewing it most favorably for the Plaintiff.

### 2. The Magistrate Judge Improperly Declined to Rule on Plaintiff's Objections and Rejected Plaintiff's Argument That Defendant Hodges' Supplemental Report Is Inadmissible and Consequently Considered Hearsay and Double Hearsay to Support His Findings

"It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." *Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988). At the summary judgment stage, however, courts do not focus on the admissibility of the evidence's form; instead, court's focus on the admissibility of its contents." *Fraser*, 342 F.3d at 1036 (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001)). Unauthenticated documents and hearsay evidence are generally not admissible, and not considered on summary judgment. *See Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773-74 (9th Cir. 2002); *Williams v. Trujillo*, No. CV1803239PHXMTLCDB, 2021 WL 4439466, at *2 (D. Ariz. Sept. 28, 2021). The Ninth Circuit has generally held that a non-movant's hearsay evidence may establish a genuine issue of material fact precluding a grant of summary judgment, upholding the rule of liberal construction that the Ninth Circuit "treat[s] the opposing party's papers more indulgently than the moving party's papers." *Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985); *see Fraser*, 342 F.3d at 1036-37; *Carmen*, 237 F.3d at 1028-29; *Beyene*, 854 F.2d at 1182; *see also Williams v. Trujillo*, No. CV1803239PHXMTLCDB, 2021 WL 4439466, at *2 (D. Ariz. Sept. 28, 2021).[5]

The content of the supplemental report drafted by Defendant Hodges is not admissible at trial because it includes both hearsay and double hearsay. *Fraser*, 342 F.3d at 1037. The Magistrate Judge attempts to remedy this by stating Defendant Hodges' supplemental report is not inadmissible because the report satisfies the public records and business records exceptions to hearsay. (Doc. 72, at 16,

---

[5] Courts have recognized the rule that "[m]aterial in a form not admissible in evidence may be used to avoid, but not to obtain summary judgment[.]" *Williams*, No. CV1803239PHXMTLCDB, 2021 WL 4439466, at *2; *Walters v. Odyssey Healthcare Mgmt. Long Term Disability Plan*, No. CV 11-00150-PHX-JAT, 2014 WL 4371284, at *3 (D. Ariz. Sep. 4, 2014) (quoting *Tetra Techs., Inc. v. Harter*, 823 F. Supp. 1116, 1120 (S.D.N.Y. 1993)).

fn. 6.) However, this exception, even if applicable for one level of hearsay, would not apply to the double hearsay[6] included in Defendant Hodges' supplemental report, as each layer of hearsay must separately qualify for an exception to the hearsay rule. *See* Fed. R. Evid. Rule 805. This Court should find consistent with applicable legal authority that inadmissible hearsay cannot be used to grant summary judgment. *See Williams*, No. CV1803239PHXMTLCDB, 2021 WL 4439466, at *2; *Walters*, No. CV 11-00150-PHX-JAT, 2014 WL 4371284, at *3.

Regardless, even if the Magistrate Judge's hearsay exception remedy is meritorious, the Magistrate Judge still failed to find that the hearsay and double hearsay evidence, at the minimum, creates an issue of fact as to whether Mr. Collier could have responded to Officer Hodges or even stand based on Dr. Lee's Declaration. The Magistrate Judge improperly declined to rule on Plaintiff's foundational and hearsay objections, improperly applied the hearsay exceptions only to one layer of the objectionable hearsay, and failed to see that considering the hearsay and double hearsay necessarily created an issue of material fact, which requires the denial of the Motion for Summary Judgment.

## III. CONCLUSION

For all of the foregoing reasons, Plaintiff requests that the Objections to the Magistrate Judge's Findings are sustained and Defendants' Motion for Summary Judgment be denied.

Dated: March 1, 2024.

WANGER JONES HELSLEY PC

By: _____
Jay A. Christofferson
Steven K. Vote
Nathan J. Martin
Attorneys for Plaintiff SUSAN OTTELE, on her own behalf and on behalf of the Estate of Adam J. Collier, decedent

---

[6] The double hearsay consists of Mr. Collier's alleged response to Defendant Hodges' question at 2:00 p.m. identified in the supplemental report, in particular, when Defendant Hodges claims he spoke directly with Mr. Collier. (See Doc. 72, at 3, lns. 19–25 (citing to Doc. 57-4, at 50; Doc. 57-2 ¶ 6; Doc. 57-5 ¶ 2, Ex. A).)