UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SUSAN OTTELE,

Plaintiff,

v.

OSCAR MARTINEZ, *et al.*,

Defendants.

Case No. 1:22-cv-00187-JLT-CDB

FINDINGS AND RECOMMENDATION TO GRANT IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

(Doc. 143)

**14-DAY DEADLINE**

Clerk of the Court to Effect E-mail Service

Pending before the Court is the motion of Plaintiff Susan Ottele, individually and on behalf of the Estate of Adam J. Collier, for default judgment against Defendant Marion Austin as administrator of the Estate of Aaron Hodges. (Doc. 143). Defendant did not file an opposition or otherwise respond to the motion. For the reasons set forth below, the undersigned will recommend that the motion for default judgment be granted in part.[1]

## I. Background

The Court has recounted the factual and procedural history of this case in numerous orders, including in its order granting partial summary judgment (Doc. 82) and order permitting Plaintiff to substitute a party in place of a deceased defendant (Doc. 128). The Court incorporates the facts from those orders here. In brief, Plaintiff brought this action against two former correctional officers she alleges were liable for the October 2020 death-by-suicide of her son, Adam J. Collier ("Decedent"), while he was in custody at Kern Valley State Prison (KVSP).

On August 23, 2024, the presiding district judge granted summary judgement in part, dismissed all claims against one of the correctional officers, and left intact a state law wrongful

[1] The matter is referred to the undersigned pursuant to E.D. Cal. Local Rule 302(c)(19).

death claim against the other correctional officer (former Defendant Aaron Hodges). (Doc. 82). Although Defendant Hodges died shortly after the action commenced, the Court had denied Plaintiff's various attempts to substitute another party for Defendant Hodges. However, on February 18, 2026, the presiding district judge granted Plaintiff's motion to substitute and substituted in place of deceased Defendant Hodges the following party: "Marion Austin as administrator of the Estate of Aaron Hodges." (Doc. 128).

Plaintiff served the operative first amended complaint on the substituted Defendant on March 11, 2026. (Doc. 134). After Defendant failed to file a responsive pleading, the Court directed Plaintiff to file a request for entry of default and, thereafter, a motion for default judgment. (Doc. 139).

Upon Plaintiff's request (Doc. 140), the Clerk of the Court entered Defendant's default on April 10, 2026 (Doc. 141). On May 11, 2026, Plaintiff filed the pending motion for default judgment. (Doc. 143). Upon finding that the motion was not noticed for hearing, the Court set a hearing before the undersigned on June 16, 2026, and directed Plaintiff to serve upon Defendant a copy of the Court's minute order setting the hearing and file proof of service thereof. (Doc. 144). Plaintiff filed the proof of service on May 12, 2026. (Doc. 145). The Court issued a second minute order informing the parties that they may appear remotely at the hearing and directing service of the order by Plaintiff upon Defendant (Doc. 147); Plaintiff filed proof of service of that minute order on May 27, 2026 (Doc. 148).

The Court convened for hearing on the motion on June 16, 2026. Attorney Jay Chistofferson and Plaintiff Ottele appeared; there was no appearance by Defendant. Following discussion during the hearing, the Court entered an order permitting Plaintiff to file supplemental briefing in support of her requested damages in the amount of $3,000,000.00. (Doc. 149). Plaintiff timely filed her supplemental brief. (Doc. 151). Defendant did not file any response to the motion for default judgment or the supplemental brief and the time to do so has expired.

## II. <u>Legal Standard</u>

In general, "default judgments are ordinarily disfavored," as "[c]ases should be decided upon their merits whenever reasonably possible." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606,

616 (9th Cir. 2016) (quoting *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986)). Prior to entry of default judgment, there must be an entry of default. *See* Fed. R. Civ. P. 55. Upon entry of default, the factual allegations of the complaint, save for those concerning damages, are deemed to have been admitted by the defaulting party. Fed. R. Civ. P. 8(b)(6); *see Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam).

Allegations regarding damages are not taken as true and must be independently proven. *Geddes*, 559 F.2d at 560. In addition, a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (quotation and citation omitted). In other words, "facts which are not established by the pleadings of the prevailing party, or claims which are not well-pleaded, are not binding and cannot support the judgment." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

A district court has discretion to grant or deny a motion for default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (per curiam); *see TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987) ("Rule 55 gives the court considerable leeway as to what it may require as a prerequisite to the entry of a default judgment.") (per curiam). The Ninth Circuit has set out seven factors to be considered by courts in reviewing a motion for default judgment: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel*, 782 F.2d at 1471–72. Entry of default judgment is not appropriate where the second and third factors weigh against plaintiff. *See Mnatsakanyan v. Goldsmith & Hull APC*, No. CV-4358 MMM (PLAx), 2013 WL 10155707, at *10 (C.D. Cal. May 14, 2013) ("The fact that factors two and three weigh against the entry of default judgment is particularly significant, as courts often treat these as the most important factors.") (citing cases).

"If the court determines that the allegations in the complaint are sufficient to establish liability, it must then determine the 'amount and character' of the relief that should be awarded." *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010) (quoting

10A Charles Alan Wright *et al.*, Fed. Prac. and Proc. § 2688, at 63 (3d ed. 1998)). However, courts may decline to enter default judgment if a party's claims are legally insufficient. *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992); *Aldabe*, 616 F.2d at 1092-93 ("Given the lack of merit in appellant's substantive claims, we cannot say that the district court abused its discretion in declining to enter a default judgment in favor of appellant").

## III. <u>Discussion</u>

As a preliminary matter, Plaintiff asserts in her supplemental briefing that she is prejudiced by the Court's "unilateral decision to substitute Ms. Austin over the Estate of Officer Hodges." Plaintiff relatedly asserts that counsel for former Defendant Hodges have "stopped participating in the litigation proceedings entirely" due to an erroneous substitution by the Court. (Doc. 151 at 6-7). As to this, Plaintiff is incorrect. The Court substituted Marion Austin in her role as administrator of the Estate of Aaron Hodges, as set forth in the presiding district judge's order granting substitution. *See* (Doc. 128 at 3).

Courts routinely refer to substituted parties in this manner. *See, e.g.*, *Price v. Triple Canopy, Inc.*, No. 2:24-cv-02430-DC-JDP, 2025 WL 1407214, at *2 (E.D. Cal. Apr. 15, 2025) ("Alfred Leon Brooks, Administrator of the Estate of Daryl Brooks, Deceased, is hereby substituted in place of Plaintiff Daryl Brooks"); *Rand ex rel. Dolch v. Am. Nat. Ins. Co.*, No. CIV, C 09-0639 SI, 2010 WL 2595142, at *4 (N.D. Cal. June 22, 2010) ("the Court hereby GRANTS the motion to substitute Debra J. Dolch, as a Special Administrator of the Estate of Daphne P. Rand, as successor in interest to plaintiff Daphne P. Rand").

Plaintiff requests that the Court issue an amended order clarifying that the correct name of the substituted Defendant is "the Estate of Aaron Hodges." (Doc. 151 at 7). Having addressed Plaintiff's unfounded argument regarding the rendering of the substituted party, the Court proceeds to analyze each *Eitel* factor in turn.

### 1. The Court Has Jurisdiction Over This Action

Federal courts are courts of limited jurisdiction and their power to adjudicate is limited to that granted by Congress. *United States. v. Summer*, 226 F.3d 1005, 1009 (9th Cir. 2000). Federal courts have federal question jurisdiction of all civil actions arising under the Constitution, laws, or

treaties of the United States. 28 U.S.C. § 1331.

A case "arises" under federal law either where federal law itself creates the cause of action or where the vindication of a state law right would "necessarily [turn] on some construction of federal law." *Republican Party of Guam v. Gutierrez*, 277 F.3d 1086, 1088-89 (9th Cir. 2002) (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 8-9 (1983)). Stated otherwise, a claim arises under federal law if the complaint cognizably pleads that federal law created the claim asserted or the plaintiff's right to relief necessarily depends on resolving a substantial question of federal law. *Construction Laborers Vacation Trust*, 463 U.S. at 27-28. Courts determine whether they have federal question jurisdiction by applying the "well-pleaded complaint rule." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). "[F]ederal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id.*

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims asserted in the operative first amended complaint arise under 42 U.S.C. § 1983. Notwithstanding that Plaintiff's federal claims were dismissed on summary judgment (Doc. 82), the Court possesses supplemental jurisdiction over the remaining state law wrongful death claim pursuant to 28 U.S.C. § 1367. *E.g., D.A. v. Witt*, No 2:17-cv-0337-MCE-DMC, 2021 WL 2802932, at *4 (E.D. Cal. July 2, 2021) ("Given the District Judge's direction following dismissal of all other defendants that Plaintiffs initiate default prove-up proceedings against Defendant Witt, the Court assumes supplemental jurisdiction over this state law [wrongful death] claim notwithstanding dismissal of the defendants against whom federal claims were pleaded."), *F&R adopted by* 2021 WL 4065543 (Sept. 7, 2021). Additionally, venue is proper as Plaintiff alleges that a substantial part of the events giving rise to the claims took place in the County of Kern. (Doc. 13 at 2).

Therefore, the Court properly exercises jurisdiction to adjudicate the merits of this action.

**2. Adequacy of Service of Process**

As a threshold matter, the Court must be satisfied that service of process on the party against whom default is requested is adequate. *J & J Sports Prods., Inc. v. Singh*, No. 1:13-cv-1453-LJO-BAM, 2014 WL 1665014, at *2 (E.D. Cal. Apr. 23, 2014) (citation omitted); *see Mason v. Genisco*

*Tech. Corp.*, 960 F.2d 849, 851 (9th Cir. 1992) (if a party "failed to serve [defendant] in the earlier action, the default judgment is void and has no res judicata effect in this action.").

Rule 4 of the Federal Rules of Civil Procedure governs service of process in this action. "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *Direct Mail Specs., Inc., v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988) (quoting *United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984)). However, "without substantial compliance with Rule 4, 'neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction.'" *Id.* (quoting *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986)).

Here, the executed summons reflects that Defendant Austin, as administrator of the Estate of Aaron Hodges, was personally served with a copy of the summons and of the first amended complaint on March 11, 2026. (Doc. 134). Plaintiff also has represented that the request for entry of default against Defendant and Plaintiff's papers filed in support of her motion for default judgment against Defendant were transmitted to Defendant by email at marion@marionaustin.com. *See* (Doc. 140 at 3; Doc. 140-1 at 6; Doc. 140-2 at 3); (Doc. 143 at 12; Doc. 143-1 at 4; Doc. 143-2 at 9; Doc. 143-3 at 563; Doc. 143-4 at 3). And on May 12, 2026, Plaintiff transmitted to Defendant by the same email address the Court's minute order (Doc. 144) setting a hearing on the motion for default judgment. (Doc. 145 at 6). On May 27, 2026, Plaintiff provided Defendant by email the Court's minute order (Doc. 147) advising the parties that they may appear remotely for the hearing. (Doc. 148 at 6).

In each proof of service where Plaintiff indicates that the transmittals noted above were completed by email, Plaintiff includes a clarifying statement that "[b]ased upon a Court Order, Local Rules of Court, or an agreement of the parties to accept service by e-mail or electronic transmission," the server caused documents to be sent to Defendant by electronic service and did not receive an indication that the transmission was unsuccessful. *See, e.g.* (Doc. 145 at 6; citing Cal. Civ. Proc. Code § 1010.6 and Cal. Rule of Court 2.251).

Because it was unclear to the Court whether Plaintiff's email transmittals to Defendant of documents relating to the instant motion for default judgment adequately provided Defendant with

notice of the proceedings, at the direction of the Court (Doc. 152), Plaintiff filed a declaration of counsel. *See* (Doc. 155). Therein, counsel attests that Defendant has on prior occasions acknowledged receipt of case-related correspondence at the identified email address. Counsel observes in his declaration that neither the Federal Rules of Civil Procedure nor the Court's local rules requires service on a defaulting party of litigation documents. *Id.* at ¶ 5.

Based on the unrefuted record and counsel for Plaintiff's attestations, the Court finds that service of process of summons and complaint was completed upon Defendant pursuant to Fed. R. Civ. P. 4 and that the pleadings and docket entries associated with the default judgment proceedings were transmitted to Defendant in a manner reasonably calculated to provide Defendant notice of these proceedings.

**3. The *Eitel* Factors**

**A. Possibility of Prejudice to Plaintiff**

The first *Eitel* factor requires the Court to consider the possibility of prejudice to the plaintiff if a default judgment is not entered. *Eitel*, 782 F.2d at 1471. Prejudice may be shown where failure to enter a default judgment would leave plaintiff without a proper remedy. *Philadelphia Indem. Ins. Co. v. United Revolver Club of Sacramento, Inc.*, No. 2:18-cv-2960-KJM-DB, 2020 WL 773419, at *3 (E.D. Cal. Feb. 18, 2020) (*citing Landstar Ranger, Inc*, 725 F. Supp. 2d at 920).

Since Defendant has refused to defend this action, if default judgment is not entered, Plaintiff would be left without a proper remedy. The Court finds that the first *Eitel* factor weighs in favor of granting default judgment to Plaintiff.

**B. Sufficiency of the Complaint and the Likelihood of Success on the Merits**

The second and third *Eitel* factors require the Court to consider the merits of the plaintiff's substantive claim and the sufficiency of the complaint. *Eitel*, 782 F.2d at 1471-72. The Court considers these two factors together given the close relationship between the two inquiries. *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1055 (N.D. Cal. 2010). These two factors generally will favor entry of default judgment where the complaint sufficiently states a claim for relief upon which a plaintiff may recover. *PepsiCo, Inc. v. California Security Cans*, 238 F. Supp.2d 1172, 1177 (C.D. Cal. 2010).

Following the Court's grant of partial summary judgment, this action proceeds only on Plaintiff's claim for wrongful death under Cal. Code. Civ. Proc. §§ 377.30, 377.60 *et seq.* *See* (Docs. 13, 82).

A cause of action for wrongful death is a statutory claim. *Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1263 (2006) (citing Cal. Code Civ. P. §§ 377.60–377.62). The purpose of a wrongful death claim "is to compensate specified persons—heirs—for the loss of companionship and for other losses suffered as a result of a decedent's death." *Id.* (citation omitted). California's wrongful death statute enumerates the parties that may bring such a claim, which provides, in relevant part:

> A cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by any of the following persons or by the decedent's personal representative on their behalf: (a) The decedent's surviving spouse, domestic partner, children, and issue of deceased children, or, if there is no surviving issue of the decedent, the persons, including the surviving spouse or domestic partner, who would be entitled to the property of the decedent by intestate succession.

Cal. Code Civ. P. § 377.60.

Under these authorities, Plaintiff has standing to assert a wrongful death claim. Decedent died intestate (*see* Doc. 13 ¶ 9) and, thus, the beneficiary of his estate pursuant to applicable state law would be persons who succeed to a cause of action under California Probate Code §§ 6401-6402. Under § 6402, all assets that do not first pass to the surviving spouse pass to the issue of the Decedent; only if there are no surviving issue do said assets pass to the Decedent's parents. Cal. Prob. Code § 6402(a)-(b). Plaintiff, as Decedent's parent, is entitled to his property by intestate succession. (Doc. 13 at 3). Plaintiff attests that no other person has a superior right to commence this action. *Id.* at 15-16.[2]

"The elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the *pecuniary loss* suffered by

---

[2] Because a wrongful death cause of action is considered "joint and indivisible," an heir who files a wrongful death action "is required to properly join all known heirs in the action." *Est. of Burkhart v. United States*, No. C 07-5467 PJH, 2008 WL 4067429, at *7 (N.D. Cal. Aug. 26, 2008) (quotations omitted; citing *Helling v. Lew*, 28 Cal. App. 3d 434, 438 (1972) & *Cross v. Pac. Gas & Elec. Co.*, 60 Cal. 2d 690, 692-93 (1964)). Here, Decedent's father, William Collier, Jr., joined the action as co-Plaintiff but was dismissed with prejudice after his passing and after time expired for any substituted parties to replace him. *See* (Docs. 23, 50, 52, 53).

the *heirs*." *Quiroz*, 140 Cal. App. 4th at 1263 (emphasis in original) (quotation and citation omitted). "A negligence claim requires proof that (1) defendant had a duty to use care, (2) defendant breached that duty, and (3) the breach of duty was the proximate or legal cause of the resulting injury." *Deloney v. Cnty. of Fresno*, No. 1:17-cv-01336-LJO-EPG, 2019 WL 1875588, at *9 (E.D. Cal. Apr. 26, 2019) (citing *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 629 (2013)).

Here, in declining to dismiss Plaintiff's wrongful death claim on summary judgment, the Court already has determined that Plaintiff adequately pleads all the elements of a wrongful death claim. (Doc. 82 at 23-26). Thus, for the reasons set forth above and in the Court's earlier order declining to grant summary judgment on the wrongful death claim, the Court finds that the sufficiency and likelihood of success factors under *Eitel* weigh in favor of granting default judgment.

### C. Sum of Money at Stake

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of the defendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176-77. The amount at stake must not be disproportionate to the harm alleged. *See Lehman Bros. Holdings. Inc. v. Bayporte Enters. Inc.*, No. C 11-0961-CW (MEJ), 2011 WL 6141079, at *7 (N.D. Cal. Oct. 7, 2011) (finding $3,275,946.83 in damages "substantial but not disproportionate to the harm suffered because of [the defendant's] breach" of loan agreements), *F&R adopted* by 2011 WL 6141073 (Dec. 8, 2011); *cf. G & G Closed Circuit Events, LLC v. Nguyen*, No. C 11-06349, 2012 WL 2339699, *2 (N.D. Cal. May 30, 2012) ("default judgment is generally disfavored when the sum of money at stake is either too large or unreasonable in light of the defendant's actions."). Generally, courts have found that this factor presents no barrier to default judgment even when millions of dollars were at stake, provided the potential damages were proportional to the harm alleged. *E.g.*, *Global Commodities Trading Group, Inc. v. Beneficio De Arroz Choloma, S.A.,* No. 2:16-cv-1045-TLN-CKD, 2022 WL 1439499, at *5 (E.D. Cal. May 6, 2022) (citations omitted), *F&R adopted* by 2022 WL 2818658 (July 19, 2022); *Lehman Bros. Holdings*, 2011 WL 6141079, at *7.

Plaintiff seeks $3,000,000.00. (Doc. 143 at 3, 11). Although this is a large sum of money,

given the allegations concerning a correctional officer's negligence resulting in Decedent's death by suicide, this factor is neutral. *Cf. D.A.*, 2021 WL 2802932, at *4 (finding under *Eitel* that $3,000,000 in requested wrongful death damages "does not weigh against entering default judgment" given "the seriousness of the conduct alleged – murder"). The Court will consider *infra* the requested amount in damages after analyzing the remaining *Eitel* factors.

**D. Possibility of Disputed Material Facts**

The fifth *Eitel* factor requires the Court to consider whether a dispute exists regarding material facts. *Eitel*, 782 F.2d at 1471-72. Where a plaintiff has filed a well-pleaded complaint, the possibility of dispute concerning material facts is unlikely. *Landstar Ranger*, 725 F. Supp. 2d at 921-22.

Here, since Defendant is in default, all of Plaintiff's well pleaded factual allegations are taken as true. *TeleVideo Sys*., 826 F.2d at 918 (citing *Geddes*, F.2d at 560); *e.g., Elektra Entm't Group Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."). Since Plaintiff's factual allegations are presumed true in this context and Defendant failed to move to set aside the default or oppose the motion for default judgment, no factual dispute exists that would preclude the entry of default judgment. Thus, this factor weighs in favor of granting default judgment.

**E. Whether the Default was Due to Excusable Neglect**

The sixth *Eitel* factor requires the Court to consider whether a defendant's default was due to excusable neglect. *PespiCo*, 238 F. Supp. 2d at 1177; *Eitel*, 782 F.2d at 1471-72. This factor implicates due process and whether defendants are "given notice reasonably calculated to apprise them of the pendency of the action and be afforded opportunity to present their objection before a final judgment is rendered." *Phillip Morris USA, Inc. v. Castworld Productions*, 219 F.R.D. 494, 500 (C.D. Cal. 2003).

Here, Defendant was properly served with the summons and complaint, as well as the motion for default judgment and notice of the hearing thereon. Despite this, Defendant failed to respond in any way. Thus, this factor weighs in favor of default judgment.

**F. Policy of Deciding Cases on the Merits**

The seventh *Eitel* factor emphasizes the "general rule that default judgments are ordinarily disfavored." *Eitel*, 782 F.2d at 1472. "Cases should be decided upon the merits whenever reasonably possible." *Id.* (citing *Pena v. Seguros La Comersial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)).

Defendant's refusal to participate in this action renders a decision on the merits virtually impossible. This factor does not weigh against default judgment.

* * * * *

The Court has considered all the *Eitel* factors and finds that, on balance, they weigh in favor of granting Plaintiffs' motion for entry of default judgment against Defendant. Next, the undersigned addresses Plaintiff's requested sum of money.

**IV. Damages**

Plaintiff seeks $3,000,000.00 in damages. (Doc. 143 at 3, 8). In her motion, Plaintiff states that this sum, though significant, is not disproportionate when compared to similar wrongful death awards. Plaintiff does not cite to any such awards in her motion, stating without support that such awards "reach the tens and hundreds of millions." Plaintiff asserts that the award she seeks is proportional to the harm caused by former Defendant Aaron Hodges, resulting in the death of Decedent. *Id.* at 8. In support, Plaintiff attaches her declaration, providing details of her personal relationship with Decedent. (Doc. 143-3). Plaintiff attaches to her declaration exhibits consisting of hundreds of pages, including pictures of Decedent, Decedent's letters and writings, as well as the letters and writings of Plaintiff. *See id.*, Exs. A, B, C.

"A parent who sues for the wrongful death of his or her child may recover damages for the loss of that child's comfort and society, and subsequent protection which the child may afford to the parent, provided these elements are considered in reasonable relation to pecuniary loss." *Riley v. Cal. Erectors, Inc.*, 36 Cal. App. 3d 29, 32 (1973). "Factors relevant when assessing a claimed loss of society, comfort, and affection may include the closeness of the family unit, the depth of their love and affection, and the character of the deceased as kind, attentive, and loving." *Hammonds v. Yeager*, No. EDCV 15-1036 SS, 2017 WL 10560471, at *2 (C.D. Cal. Aug. 9, 2017)

(quoting *Mendoza v. City of W. Covina*, 206 Cal. App. 4th 702, 721 (2012)). On the other hand, a parent may not recover for other claimed noneconomic (emotional) damages, such as emotional distress, grief and sorrow. *Id.* (citing cases); *see K.J.P. v. Cnty. of San Diego*, 612 F. Supp. 3d 1097, 1155 (S.D. Cal. 2022) (noting that noneconomic wrongful death damages are the pecuniary value of the decedent's society and companionship and may not include "compensation for the grief or sorrow of the death of a loved one, sad emotions, or the sentimental value of the loss"). Because "[t]he purpose of a wrongful death action is to compensate the decedent's survivors for their loss," it is appropriate to calculate a surviving parent's wrongful death damages according to her life expectancy. *See Sutton v. Earles*, 26 F.3d 903, 918 (9th Cir. 1994).

As noted herein, while a party's default establishes that party's liability, it does not establish the resulting amount in damages. *Geddes*, 559 F.2d at 560. "Where damages are liquidated, i.e., capable of ascertainment from definite figures contained in documentary evidence, or in detailed affidavits, judgment by default may be entered without a damages hearing. Unliquidated and punitive damages, however, require 'proving up' at an evidentiary hearing or through other means." *Monclova-Chavez v. McEachern*, No. 1:08-cv-76-AWI-BAM, 2015 WL 75084, at *6 (E.D. Cal. Jan. 6, 2015) (quoting *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)), *F&R adopted on Feb. 3, 2015, as stated in* 2018 WL 2106481 (May 7, 2018). A "[p]laintiff's burden in 'proving up' damages is relatively lenient. If proximate cause is properly alleged in the complaint, it is admitted upon default. Injury is established and plaintiff need prove only that the compensation sought relates to the damages that naturally flow from the injuries pled." *Elektra Ent. Grp., Inc. v. Bryant*, No. CV 03-6381GAF(JTLX), 2004 WL 783123, at *2 (C.D. Cal. Feb. 13, 2004) (citing, *inter alia*, *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 159 (2d Cir. 1992)).

In this case, Plaintiff's claim for damages is not for a "sum certain or a sum that can be made certain by computation." *See* Fed. R. Civ. P. 55(b)(1). During the hearing on the motion, Plaintiff was given the opportunity to submit a supplemental brief regarding the requested damages (Doc. 149) and Plaintiff timely submitted her brief (Doc. 151). The Court has considered Plaintiff's motion, her declaration, and her supplemental brief and finds that the record is sufficient to assess

damages without any further evidentiary hearing.

First, the Court rejects Plaintiff's argument that her wrongful death damages award should be calculated in part by measuring the fault of the correctional officers and/or correctional institution where Decedent was housed at the time of his passing. For instance, she argues that "[l]arge compensatory awards are a rational response to institutional conditions that generate preventable death" and that "systemic and institutional failures make substantial damages foreseeable and justified." (Doc. 151 at 7-8) (emphasis added). Plaintiff cites no authority in support of the proposition that an award of wrongful death damages should be informed in part by achieving the goals of punishing wrongdoing or incentivizing a wrongdoer's corrective behavior; indeed, relevant authority is to the contrary. *See, e.g., Ford Motor Co. v. Superior Court*, 120 Cal. App.3d 748, 751 (1981) ("it has long been established in California that punitive damages may not be recovered in a wrongful death action").

Second, the Court rejects Plaintiff's argument that her wrongful death damages award should be calculated in part by accounting for the fact that her "suffering is heightened" and "the loss [of Decedent] even more painful" given that Decedent's death was avoidable if custodial staff had been more attentive to Decedent's risk of suicide. (Doc. 151 at 9). As noted above, a wrongful death claimant may not be awarded damages for emotional distress, grief, or sorrow. *Hammonds*, 2017 WL 10560471, at *2; *see, e.g., Nelson v. Cnty. of Los Angeles*, 113 Cal. App. 4th 783, 794 (2003) (reversing jury's $2 million wrongful death damages award for parents of deceased child; reasoning, "[t]he inescapable conclusion is that the jury included in its calculations some measure of damages for the parents' emotional distress, or some amount intended to punish the County for its conduct.").

Third, the Court rejects Plaintiff's argument that "a $3,000,000.00 award aligns with outcomes repeatedly sustained by courts confronting preventable deaths of incarcerated individuals." (Doc. 151 at 10). In support of this argument, Plaintiff cites two cases where an estate sued on behalf of an inmate that died due to the deliberate indifference of custodial staff. In the first case (*Thomas*), the Seventh Circuit upheld a jury's verdict that the defendants, including a municipality, had violated the deceased inmate's constitutional rights, warranting a $4 million

award under Section 1983, and a $150,000 award under Illinois' wrongful death statute. Thus, that case is of limited value here given Plaintiff's Section 1983 claims were dismissed on summary judgment. Plaintiff's other case (*Young*) is similarly unhelpful as it likewise involved a Section 1983 municipal liability claim and a jury's $10 million compensatory and $68 million punitive damages award. *See, e.g., Stephenson v. State*, No. CV 5:21-00526-JAK (DTBx), 2026 WL 2535838, at *7 (C.D. Cal. Aug. 26, 2026) (noting that while damages for emotional distress, grief, and sorrow may be awarded for a violation of Section 1983, they are not available under California's wrongful death statute) (citing cases).

Plaintiff has proffered some evidence that illustrates her loss of Decedent's comfort and society that she has experienced, largely consisting of over 300 letters she authored to Decedent during a 4.5 year period of Decedent's incarceration leading up to his death by suicide. The letters reflect that Plaintiff and Decedent experienced a close family bond and shared with each other love and affection. For instance, on December 26, 2016, Plaintiff authored a letter to Decedent that she characterizes as "Letter #39" (*see* Doc. 143-3 at 328), in which she wrote:

> Dear Adam,
> Happy 40th Birthday Adam Joe! It is hard to believe you are forty, the years have flown by. It seems like only a few years ago I held you in my arms as a baby, soon thereafter we were picking strawberries in the mountains and following ant trails, moving to Santa Cruz and going to school, then returning to Oregon. We together have had many struggles, which have made us closer and stronger as individuals. Sweet memories and some hard memories. You my son, have given me more than you know and no one person on this earth will ever love you more than I do.

On August 14, 2017, she authored "Letter #65" to Decedent (*see* Doc. 143-3 at 355):

> You and Eli are the loves of my life. The reason for my existence. You are my heart and the reason I breathe. You are part of me and will always be. I wish I could have been a better Mother/Father/provider. I made many mistakes, but my two greatest achievements in this life are you and Eli.

Consistent with the authorities cited above, the undersigned's difficult task is to calculate a damages award that reasonably compensates Plaintiff for something that she lost in Decedent's wrongful death – specifically, his comfort and society – without regard to compensating Plaintiff for any other emotional or other type of harm or loss. *Mendoza*, 206 Cal. App. 4th at 721; *K.J.P.*, 612 F. Supp. 3d at 1155. In calculating this amount, the Court estimates that Plaintiff was approximately

71 years old when Decedent passed in October 2020, and has a life expectancy of 79 years.[3] Accordingly, the undersigned calculates eight (8) years of wrongful death damages (*see Sutton*, 26 F.3d at 918) and concludes, based on the evidence proffered by Plaintiff and summarized above, that Plaintiff's wrongful death damages are valued to be $500,000 (approximately $62,500 per year of loss of Decedent's comfort and society). *Cf. Mendoza*, 206 Cal. App. 4th at 721 (affirming $750,000 wrongful death award to each of two children of father who died in custody following an excessive use of force incident); *D.A.*, 2021 WL 2802932, at *4 (recommending $333,333 wrongful death award to each of three children where evidence of relationship with deceased mother was "conflicting").

## V. Conclusion and Recommendation

The Clerk of the Court is DIRECTED to transmit a copy of these findings and recommendations to Defendant by electronic mail (marion@marionaustin.com).

For the foregoing reasons, it is HEREBY RECOMMENDED that:

1. Plaintiff's motion for default judgment (Doc. 143) against Marion Austin, as administrator of the Estate of Aaron Hodges, be GRANTED in part.
2. Default judgment be entered against Defendant Marion Austin, as administrator of the Estate of Aaron Hodges.
3. Plaintiff be awarded the amount of $500,000.00 against Defendant Marion Austin, as administrator of the Estate of Aaron Hodges.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within 14 days after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Objections may not exceed 15 pages and shall not attach any exhibits. The

---

[3] In a letter dated to Decedent dated July 16, 2017, (Doc. 143-3 at 350), Plaintiff discusses her attendance at her 50th high school reunion. From this, the Court infers that Plaintiff was approximately 68 years old in July 2017, and, thus, approximately 71 years old when Decedent passed in October 2020. A conservative estimate of Plaintiff's life expectancy is 79 years old. *See* Social Security Administration, "Cohort Life Expectancy" (*available at* https://www.ssa.gov/oact/TR/2011/lr5a4.html, last visited Oct. 19, 2026) (using 1950 female year of birth).

presiding district judge may disregard any exhibits or pages that exceed these limitations.

Any failure by a party to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **October 19, 2026**

UNITED STATES MAGISTRATE JUDGE